PIONEER MILL COMPANY, LIMITED, AN HAWAIIAN CORPORATION, v. VICTORIA KATHLEEN WARD, EXECUTRIX, ET AL., RESPONDENTS.

No. 2283.

SUBMITTED NOVEMBER 1, 1938.     DECIDED NOVEMBER 25, 1938.

PETERS AND KEMP, JJ., AND CIRCUIT JUDGE BROOKS IN PLACE OF COKE, C. J., ABSENT.

OPINION OF THE COURT BY KEMP, J.

On May 14, 1930, Pioneer Mill Company, Limited, filed its bill in the circuit court, second circuit, for a partition of the land situated at Honokowai, Kaanapali, County of Maui, Territory of Hawaii, known as the ili of Waihele, being more fully described in royal patent number 7691, land commission award number 327-B to John Previer. The ili of Waihele contains six apanas, all situated in the

valley of Honokowai. Certain of the apanas are partially bounded by the Honokowai stream and the remaining apanas are situated a short distance from the stream. The areas of said lands are as follows: apana 1, 28 acres; apana 2, 6.80 acres; apana 3, 7.39 acres; apana 4, 4.69 acres; apana 5, 30.50 acres; apana 6, 117.45 acres, or a total for all of the lands of 194.83 acres. In the bill for partition apana 6 is divided into two lots, designated lots 6 and 7, lot 6 containing 43.45 acres and lot 7 containing 74.00 acres. In the original bill the petitioner alleged that it owned an undivided 716/896 interest in all of said lands; that the appellant Victoria Kathleen Ward owned an undivided 56/896 interest, and that various other persons owned the remaining undivided interest. Prior to the trial in 1935 the petitioner had acquired various of the interests which it admitted were owned by others at the time of the filing of its original bill and its bill was amended so as to claim for petitioner an undivided 766.8346/896 interest, still admitting that Victoria Kathleen Ward, the appellant, owned an undivided 56/896 interest and the remaining respondents owned the remaining interest in varying fractions.

The ownership of fractional interests set forth in the amended bill and found to be correct follows:

| | |
|---|---|
| Pioneer Mill Company, Limited, | 766.8346/896 |
| Mrs. Victoria Ward | 49.0000/896 |
| Miss Victoria Kathleen Ward | 56.0000/896 |
| Mrs. Caroline J. Robinson | 21.0000/896 |
| Three Kukeas (jointly) | .8000/896 |
| Eight Kaleiwaheas (jointly) | .6154/896 |
| Thomas Duncan | 1.7500/896 |
| Total | 896.0000/896 |

In the original bill the petitioner alleged that the lands were not susceptible of partition in kind and prayed that the lands be sold and the proceeds divided. No claim of sole ownership of improvements was made in the original

bill. In answering the original bill the respondents Victoria Ward and Caroline J. Robinson and Victoria Kathleen Ward, the respondent-appellant, prayed that upon a hearing a commissioner be appointed by the court with power to investigate and report upon the practicability of partitioning said land in kind. In its amended bill filed in 1934 the petitioner alleged the acquisition of additional interests in the lands and alleged that it and its predecessor in title, Lahaina Agricultural Company, Limited, had been in possession of said lands for many years and had made extensive improvements thereon, including the construction of buildings, railroads, ditches, tunnels and pipelines in good faith and under the honest belief that petitioner or its predecessor in title, Lahaina Agricultural Company, Limited, had acquired title to all of said lands or the right to acquire such title, and that said lands and said improvements made thereon by petitioner or its predecessor as aforesaid had for many years last past been used by petitioner as part of its sugar cane plantation, prayed for partition in kind and that there be set apart for petitioner the particular portions of said land which petitioner has improved. The appellant Victoria Kathleen Ward, Victoria Ward and Caroline J. Robinson each filed a separate answer to the amended bill, denied that the petitioner or Lahaina Agricultural Company, Limited, the predecessor in title of petitioner, had made any improvements upon the property described in the complaint under the honest belief that petitioner or its predecessor in title had acquired any title or right to said property and at the trial the amended answers of all three were further amended so as to allege that said lands were not susceptible of partition in kind and prayed for a sale of the lands and a partition of the proceeds. A guardian *ad litem* was appointed for the minor respondents who filed an answer in their behalf, neither admitting nor denying the allegations of the bill, and demanded full proof.

After a lengthy trial a decree was entered on March 9, 1935, holding that petitioner and its predecessor in title, Lahaina Agricultural Company, Limited, had for many years been in occupancy of the several pieces of land sought to be partitioned, other than possibly lot 7 or a portion thereof, and that during these years of occupancy had expended large sums of money upon said property in the construction of a water tunnel across and several hundred feet beneath the surface of lot 7; railroad tracks over and across lots 2 and 3; improvements such as buildings, water pipes, corrals and fences on lot 1 and the planting of sugar cane and other growing crops on lots 1, 2, 3 and 4; that from time to time petitioner has paid to its cotenants and the cotenants have accepted rentals for their respective interests in said lands; that the interests of the parties in said land were correctly alleged in the amended bill but that the tunnel under lot 7 and the railroad tracks on lots 2 and 3 are not improvements inuring to the benefit of respondents or any of them but are of great value to petitioner and that the moneys so expended were made in good faith and that said tunnel and railroad tracks and all of the improvements hereinabove mentioned were made under the honest belief that the petitioner or its predecessor, the Lahaina Agricultural Company, Limited, had acquired or was about to acquire full title to all of said lands. The court further decreed the amount of rentals due and unpaid to the various respondents, including the appellant, and ordered petitioner to pay the same. The court further decreed that all of the structures and improvements, consisting of a water tunnel running through lot 7, the railroad tracks, rails and ties on lots 2 and 3 and the buildings, fences, corrals and water pipes on lot 1, as well as the growing crops on lots 1, 2, 3 and 4, are the sole property of petitioner and that the respondents have no interest therein.

A commissioner was appointed to partition the lands into shares to which the parties hereto are entitled as above decreed without taking into account the value of said water tunnel, railroads, improvements and crops, which are the sole property of petitioner as above decreed, and directed the commissioner as far as practicable in partitioning the said land to set off to petitioner as part of its share to which it is entitled in the said land the land upon which the said structures and improvements have been placed, and further decreed that if any part of the land on which growing crops are situated should be set off to respondents or any of them that provision be made for petitioner to bring to maturity and harvest such crops upon paying a reasonable rental for the land so occupied. It further provided that the commissioner or any of the parties herein may, upon notice given to the other parties, apply to the court for further directions in the premises.

On March 11, 1935, petitioner's bill of cost was taxed. $318.65 of the cost was taxed against the respondents Victoria Ward, Victoria Kathleen Ward and Caroline J. Robinson alone and the remaining $322.55 of said cost, paid by petitioner in the first instance, was taxed against all parties hereto in proportion to their interest in the land as decreed by the decree of partition of March 9, 1935. The costs which were taxed against the three respondents alone are the costs expended in the taking of depositions, procuring certified copies of records of the bureau of conveyances, land court and circuit courts and witness fees and mileage paid witnesses called to testify at the trial, all deemed necessary to establish the title of the various parties and the circumstances under which petitioner claimed sole ownership of the improvements on the land.

On November 1, 1935, petitioner filed a petition for a writ of revivor, setting up the death of one of the respondents, the appointment of an executor of her estate, and

praying that this action be revived against the executor. In said petition it is alleged that at all times hereinafter mentioned this action has been and still is pending. The writ of revivor issued as prayed.

The commissioner, in compliance with said decree, procured apana 1, to be subdivided into lots 1-A to 1-I, inclusive. Lots 1-A, area 1.06 acres; 1-F, area 6.41 acres; 1-I, area 0.18 acres; and apanas 2, 3, 4, 5 and 6 (lots 6 and 7) were set off to petitioner. Lot 1-H, area 10 acres, was set off to Victoria Kathleen Ward; 1-E, area 2.07 acres, to Caroline J. Robinson; 1-G, area 6.83 acres, to Victoria Ward; 1-B, area 0.13 acres, to the heirs of Kukea; 1-C, area 0.17 acres, to the heirs of Kaleiwahea, 1-D, area 0.38 acres, to Thomas Duncan, and the roadway running through lot 1, having been found to be the property of the Territory of Hawaii, was excluded; also a roadway was laid out through apana 1 so as to give access to the public road from all of the various subdivisions. He asked that a hearing be had upon his report and that if the same met with the approval of the court he be permitted to execute proper deeds to the several parties. Petitioner filed exceptions to the report of the commissioner. No exceptions were filed to said report by any of the respondents.

On January 24, 1936, a final decree in partition was entered which, after reiterating all of the findings contained in the decree of March 9, 1935, recites that the commissioner appointed in said decree had filed his report, accompanied by maps of the proposed plan of division and partition of said lands; that the petitioner filed exceptions to the report of the commissioner and said exceptions having come on for hearing and petitioner stating at said hearing that if this decree should remain final and should not be set aside on appeal by any of the parties hereto the petitioner would not insist upon said exceptions being granted, otherwise the petitioner reserved the right to in-

sist upon said exceptions if this decree should be set aside or modified. Said final decree approved and confirmed the report of the commissioner in every respect except as otherwise specifically modified by this decree and divided among the several owners the lands according to the allotment made to and for the benefit of said owners as in this decree set forth. The exception referred to was as to the allotment to certain of the respondents which the court had ordered sold. Said decree further vested in the petitioner and the various respondents the parcels of land which the commissioner had set off and allotted to them.

On the same day a supplemental decree was entered whereby the fee and expenses of the commissioner were determined and ordered paid by the various parties to this proceeding.

On the 29th day of January, 1936, Victoria Kathleen Ward, one of the respondents, filed her notice of appeal and appeal to this court from the final decree made and entered in the above entitled cause on the 24th day of January, 1936, and the supplemental decree made and entered on the 24th day of January, 1936.

The assignments of error, set forth in appellant's brief, challenge the correctness of the rulings that said lands are fairly susceptible of partition in kind and that the improvements placed on the land by petitioner are the sole property of petitioner and that respondents have no interest therein. They also challenge the circuit judge's taxation of certain of the costs against three of the respondents, including the appellant, by the decree of March 11, 1935. No other rulings are challenged.

Petitioner has moved that the appeal be dismissed on the ground that the decrees of March 9 and 11, 1935, are, as to all of said issues, final and appealable and that the appeal, not having been perfected within the statutory time after the entry of said decrees, comes too late. It is not

contended that the appeal was not perfected within the statutory time after the entry of the decrees of January 24, 1936. We have, by order heretofore entered, denied the motion to dismiss the appeal without indicating whether or not all of the issues argued by the appellant may be considered on this appeal.

It is well-settled that an appeal from a final decree in equity brings up for review all interlocutory orders not appealable directly as of right which deal with issues in the case. (*Focke* v. *Gay,* 26 Haw. 290, and cases cited.)

The question of the finality of decrees is not free from difficulty. This court has entertained an appeal from a decree in partition ordering the property sold for the purpose of effecting a partition although the question of the finality of said decree does not appear to have been raised or considered. (*Lee Chu* v. *Noar,* 14 Haw. 648.) This court has also entertained an interlocutory appeal by the respondent in a partition case where the controversy was as to the interest owned by the petitioner. She claimed and the court decreed her a one-seventh undivided interest whereas the respondent claimed that her interest was only an undivided one-eighth interest. (*Makainai* v. *Lalakea,* 29 Haw. 482.) After the above appeal and the case was again before the circuit judge a new party appeared and was permitted to intervene. A demurrer to his answer and claim having been sustained, he appealed to this court where it was held that the decree involved in the interlocutory appeal was in fact interlocutory. (*Makainai* v. *Lalakea,* 30 Haw. 323, 330.) Counsel has argued that the above holding is dictum. With this we cannot agree. This court was considering the question of whether or not the intervenor was precluded by the former decree from asserting his interest in the lands in question and gave as the principal reason why he was not that said decree was not final but interlocutory.

A leading case on the finality of decree in partition is *Green* v. *Fisk*, 103 U. S. 519, 26 L. Ed. 485. In that case Chief Justice Waite, speaking for the court, said: "In partition causes, courts of equity first ascertain the rights of the several persons interested, and then make a division of the property. After the division has been made, and confirmed by the court, the partition, if in kind, is completed by mutual conveyances of the allotments to the several parties. * * * A decree cannot be said to be final until the court has completed its adjudication of the cause. Here the several interests of the parties in the land have been ascertained and determined, but this is merely preparatory to the final relief which is sought; that is to say, a setting off to the complainant in severalty her share of the property in money or in kind. This can only be done by a further decree of the court."

*Elder* v. *McClaskey*, 70 Fed. 529, also a partition case, holds that the decree which determines the interest of the parties in the property and appoints a commissioner to effect the partition is interlocutory. By the issues made on the pleadings it became necessary to determine the interests and descent of the complainants and cross-complainants from the ancestor in whom the title was conceded to have been and also the question of whether the right of entry was barred by the statute of limitations. The court determined these issues by decree in November, 1891. Final decree in the case was entered in August, 1894. From the final decree there was an appeal and matters determined by the 1891 decree were assigned as error. Appellees moved to dismiss or strike out certain assignments of error made by appellants on the ground that they were based on issues disposed of in the decree of 1891 and therefore not cognizable on an appeal from the 1894 decree.

Circuit Judge Taft, speaking for the circuit court of appeals, in an opinion which shows that the question was

given an unusual amount of attention, said in part: "By the issues made on the pleadings, it became necessary to determine the interests and descent of the complainants and cross complainants from the ancestors in whom the original title was conceded to have been, and also the question whether the right of entry had not been barred by the statute of limitations. But these issues were but incidental to the main relief asked, which was a partition of the land, and a setting apart of their proper shares to the complainants and cross complainants. But for the fact that this was the main object of the bill, no possible ground for the jurisdiction of a court of equity existed. A mere dispute concerning title and right to possession must inevitably have been dismissed from the equity side of the court, and redocketed on the law side. In an equitable action for partition, the preliminary inquiry of the court is always as to the various undivided interests; and not until after these are fixed does the court proceed to its main judicial function in such cases,—of determining how the partition prayed for can be equitably made, and of making it. The decree of November, 1891, settled what the various undivided interests of the parties to the cause were, and found that the complainants and cross complainants were entitled to partition. It appointed three commissioners to make partition, with authority to employ a surveyor and to allot to the parties their respective shares as declared in the decree, but, if they found it impossible to partition any tract without manifest injury, to report this fact. * * * Fortunately, however, we are not obliged in this case to refer to general rules to settle the question of the interlocutory character of this decree. In Green v. Fisk, 103 U. S. 518, the complainant filed a bill for partition of real estate not susceptible of partition (as the land in this case was also reported to be), praying a partition by sale. The court entered a decree finding the exact interest of complainant

in the land, and his right to partition, and referred the case to a master 'to proceed to partition according to law, under the direction of the court.' It was held that it was not a final decree. * * * If the decree of November, 1891, was not a final decree, as the foregoing authoritative language conclusively shows, then no final decree was entered until August, 1894; and an appeal properly taken and allowed from that decree brings up for review all the questions in the cause, both those decided by the decree of 1891 and those subsequently arising." (See also 20 R. C. L., T. Partition, § 47, p. 770; *Montoya* v. *Heirs,* 16 N. M. 349, 120 Pac. 676; *Torrez* v. *Brady,* 292 Pac. [N. M.] 901; *Camp Phosphate Co.* v. *Anderson,* 37 So. [Fla.] 722, 111 A.S.R. 77; *Webster* v. *Webster,* 154 N. E. [N. Y.] 588.)

A few state courts hold that where title is an issue in partition the decree which determines that issue is final and appealable. (*Castillo* v. *Farias,* 64 S. W. [2d] [Tex.] 989; *Jones* v. *Jones,* 150 N. E. [Ind.] 65; *Hardin* v. *Wolf,* 148 N. E. [Ill.] 868; *Bates* v. *Hanks,* 90 S. W. [2d] [Ky.] 743; *Sinclair* v. *Purdy,* 139 N. E. [N. Y.] 255.) However, in view of the authorities, we are convinced that the decree of March 9, 1935, is interlocutory and that an appeal from the final decree brings up the issues argued by the appellant. We therefore proceed to a consideration of the issues presented.

The following pertinent facts are either uncontroverted or are well-established by the evidence: Upon lots 1-A and 1-F, which were awarded to the petitioner, there are a number of houses built by petitioner to house its employees. Most of these houses were built in 1917, some in 1919 and one in 1924, at a cost of $3107.55. The uncontroverted evidence is that these houses, together with fences and pipelines, had at the time of the trial a book value of $2623.25 after adding the cost of repairs and deducting a normal depreciation. On lot 2 there is a railroad the book value

of which at the time of the trial was, according to the uncontroverted evidence, $684.84; and on lot 3 there is a railroad which at the same time had a book value of $385.78. It does not appear from the evidence just when these railroads were built. On or under lot 7 there is a water tunnel. The length of the portion of the tunnel which is under said lot is 1076.6 feet and penetrates said lot 7 several hundred feet under the surface. The records produced by the petitioner show that this water tunnel cost for its entire length $119,416.74 and that by prorating the cost of said tunnel according to length the portion of the tunnel which is under the land here involved cost $16,-019.81, which petitioner has depreciated at the rate of 2% per annum, leaving a value at the time of the trial of $11,213.87. This tunnel taps Honokowai stream above the lands here involved and diverts all of the water of said stream which formerly flowed through its bed to certain apanas of the land subject to partition and on to the sea to other lands owned by petitioner and to some of the lands involved in this partition. The construction of this tunnel was commenced in October, 1916, and was finished in August, 1918. More specifically the work done toward the construction of said water tunnel in 1916 consisted of the clearing of the land; the actual work of boring the tunnel began February 13, 1917, and was completed in March, 1918, and the lining of the tunnel with concrete was completed in August, 1918. All of said improvements, buildings, railroads and tunnel were built and paid for by the petitioner, Pioneer Mill Company, Limited.

The circuit judge made no findings as to the value of the various improvements. He no doubt considered such a finding unnecessary since he held that the same belonged solely to the petitioner. He ordered the commissioner appointed to effect the partition to set off as far as possible to

the petitioner the lands upon which said improvements are situated.

There is a marked difference in the opinion of various witnesses as to the value of the separate parcels of land without taking into consideration the value of the improvements. One witness called by the respondent, who testified to values, placed a total value of $21,160.25 upon the lands without considering any value for improvements. He did attempt to place a value upon the buildings situated upon lot 1-A, although he did not pose as an expert on building values. The highest value placed by any witness upon the lands, without considering improvements, was approximately $27,000 and the value fixed by the commissioner who appraised the same was $19,247.90. It cannot be ascertained what value the commissioner placed on the lots set off to the respondents. During the course of the trial when the court was considering evidence as to value and as to whether or not the land was susceptible of partition in kind without prejudice to the parties the respondent Victoria Kathleen Ward, who was contending that the court should order the lands sold for the purpose of partition instead of attempting to partition it in kind, or appoint a commissioner to report the feasibility of partition in kind, offered an upset price of $30,000 for the land if the court would order the lands sold for the purpose of partition. Her offer was for the land without the improvements. It is undisputed that she paid $3000 for her 56/896 interest in the land which would place a valuation of $48,000 upon the whole of the land. She bought her interest in said land approximately one year before this suit was instituted and about six years prior to the trial.

It is undisputed that since the boring of said tunnel all of the water of Honokowai stream is diverted at the intake of said tunnel and no longer flows through the stream to the lands situated below the intake. Apana 1, which lies

upon the seashore, is described in the award as a house lot and is bounded upon one side by the Honokowai stream; apana 2 is bounded on two sides by the Honokowai stream; apana 5, which is described as kula and kalo land, is described as running to a large rock in the middle of the river and thence along down the river to the end of Mr. Previer's kalo land; apana 6 (now lots 6 and 7) is described as mountain land; apanas 3 and 4 are described as kula land and do not touch the stream. Petitioner's evidence clearly establishes the fact that the water tunnel carries water principally to lands owned by the petitioner but does carry some water situated upon the lands involved in this partition which are planted to sugar cane.

Bearing upon the question of whether or not petitioner is entitled to claim sole ownership of the improvements which it placed upon said lands, the following facts are either uncontroverted or well-established by the evidence: In July, 1896, petitioner leased from the then owners, for a term of twenty years, all of the lands involved in this suit except apana 1, which was expressly excluded from the lease. The lease contained a covenant by the lessee as follows: "and that at the end or earlier determination of this term to peaceably quit and surrender the demised premises with the improvements to the said Lessors or their representatives." With the possible exception of the railroads, which are situated upon two of the lots, no improvements were placed upon the land by petitioner during the twenty-year term of said lease. However, at the expiration of the term of said lease petitioner continued to occupy said lands and to pay rent from time to time to the owners of said land. This holding over after the expiration of the lease, contrary to the contention of counsel for petitioner, constituted petitioner a tenant from year to year subject to the tenancy being determined by proper notice. (*Charles*

*L. Hopkins* v. *Chung Wa,* 4 Haw. 650; *Parke* v. *Robinson,* 6 Haw. 666; 35 C. J. 1101.)

The tenancy from year to year, which resulted from the holding over by petitioner after the expiration of the 1896 lease, was subject to the same covenants and agreements contained in that lease. (Jones, Landlord and Tenant, § 201; 2 Taylor's Landlord and Tenant [8th ed.], § 525, p. 121; *Brewer* v. *Knapp,* 1 Pick. 332; *Schuyler* v. *Smith,* 51 N. Y. 309; *Prickett* v. *Ritter,* 16 Ill. 96; *Bacon* v. *Brown,* 9 Conn. 334; *Newberger* v. *Fletcher Land Co.,* 46 R. I. 390; *Hobbs & Son* v. *Grand Trunk Ry. Co.,* 93 Vt. 392.) One of the covenants was, as we have seen, to surrender the demised premises with improvements to the lessors or their representatives.

As to apana 1 it does not definitely appear just when or by what claim of right petitioner went into possession or claimed when the improvements were erected thereon. The evidence discloses that in the year 1917 petitioner erected improvements upon apana 1 and continued to occupy said apana to the time of the trial. The water tunnel running under apana 6 (lot 7) was constructed about the same time as the houses upon apana 1. It does not appear just when the railroads were erected upon two of the lots, whether before or after the expiration of the twenty-year term of the lease. But as to said railroads it appears that they were placed upon the land by the petitioner either during the term of its lease or between the time of the expiration of the lease and the date upon which it first purchased an interest in the land. They were, therefore, placed upon the land by petitioner at a time when its only interest in the land was either as a lessee or as a holdover tenant of the then owners. The water tunnel was constructed while petitioner was a holdover tenant. As to the improvements upon apana 1 it appears that they were placed

thereon by petitioner at a time when it was a mere trespasser. To be more specific, the houses upon apana 1, with the exception of one erected in 1919 and one in 1924, were all erected in 1917. The water tunnel was commenced in February, 1917, and completed in August, 1918. The Lahaina Agricultural Company, Limited, the principal predecessor in title to petitioner, purchased its first interest in said land on November 21, 1919, and the first purchase by petitioner of an undivided interest in said land was on April 2, 1924, when it purchased the interest of Lahaina Agricultural Company, Limited. Petitioner acquired other interests ranging from that date to November 16, 1934.

It is, however, uncontroverted that petitioner owned 965 of the 1000 shares of the capital stock of Lahaina Agricultural Company, Limited, and that Lahaina Agricultural Company, Limited, was organized and incorporated by petitioner as a land-holding company because of the then existing thousand-acre clause of the Hawaii Organic Act. Counsel admit this. Said corporation, in 1916, prior to the termination of the 1896 lease to petitioner, opened negotiations with J. Lawrence P. Robinson, one of the owners of said land, for the purchase thereof. It appears that Lahaina Agricultural Company, Limited, assumed that Mr. Robinson was agent for the other owners for Mr. F. E. Thompson, attorney for Lahaina Agricultural Company, Limited, addressed him as "agent, Previer heirs." Mr. Robinson was, however, only one of many Previer heirs who were the owners of said land at the time and it does not appear that he represented himself as agent for all of said heirs or that he had authority to bind any of the other owners of interests in said land. At that time Henry P. Robinson, the predecessor in title to Victoria Kathleen Ward, was one of the owners. It appears from the evidence that Henry P. Robinson was not consulted and when a deed was sent to him for his signature he returned it without

signing it and without comment. He later sold his interest to the appellant in 1929 for $3000.

Apparently at about the same time that Lahaina Agricultural Company, Limited, opened negotiations with Mr. Robinson for the purchase of said land petitioner opened negotiations with him for a new lease of said lands. It does not appear just how these negotiations were opened but on May 24, 1916, Mr. Robinson, in a letter addressed to Mr. Frank E. Thompson in reply to a letter of May 6, 1916, acknowledged receipt of a lease executed by Pioneer Mill Company, Limited, and stated that he would proceed with the matter of obtaining the signature of the lessors unless otherwise instructed. It does not appear what instructions, if any, were given him with reference to said lease, neither does it appear whether or not the lease was ever executed by Mr. Robinson or any of the other owners.

As a result of the negotiations between Mr. F. E. Thompson, attorney for Lahaina Agricultural Company, Limited, and Mr. J. Lawrence P. Robinson, various of the owners of undivided interests in the Previer lands on November 21, 1919, conveyed their undivided interests to said Lahaina Agricultural Company, Limited. Some of the owners of interests declined to execute the deed tendered to them for signature and some (it does not appear why) did not join in the deed.

While we have gone into some detail as to the negotiations for and the purchase of interests in this land by Lahaina Agricultural Company, Limited, we are of the opinion that neither the negotiations of the Lahaina Agricultural Company, Limited, nor the purchase by said company of an undivided interest in said lands conferred any rights whatever upon the petitioner in said land or in the improvements thereon. It was a legal entity entirely separate from petitioner, its principal stockholder. Petitioner acquired no rights in said lands which changed its status as a tenant

until the Lahaina Agricultural Company, Limited, conveyed the interest which it had purchased in said lands to the petitioner, which was not until April 2, 1924. In other words, petitioner's claim of sole ownership of said improvements must be adjudged without reference to the relationship of Lahaina Agricultural Company, Limited, to said title at the time petitioner erected said improvements. We need not consider what the situation would be had Lahaina Agricultural Company, Limited, erected said improvements.

The facts disclosed by the evidence are that at the time the petitioner was constructing the improvements upon said land Lahaina Agricultural Company, Limited, a separate corporation, was negotiating for the purchase of said lands and did, about fifteen months after the completion of the water tunnel, acquire by purchase an undivided interest in said lands, but there is not a scintilla of evidence tending to establish that the petitioner at said time had any interest in said land other than as a holdover tenant of a portion thereof and had not even negotiated for a purchase of said lands or for any other interests therein except as a lessee. Under these circumstances we are of the opinion that in examining the ruling of the circuit judge that the petitioner is the sole owner of said tunnel and railroads upon the land, we are governed by the terms of the lease, said improvements having been placed on that portion of the land demised by the 1896 lease at a time when petitioner was in possession as a holdover tenant subject to the covenants and agreements in said lease.

Likewise, we are of the opinion that the right of petitioner to the improvements placed upon lot 1 is to be tested by the law applicable to a trespasser who improves land and afterwards becomes a cotenant.

Petitioner's assertion of sole ownership of said improvements is based on the claim that it and its predecessor in

title, Lahaina Agricultural Company, Limited, had been in possession of said land for many years and had made said improvements in good faith and under the honest belief that it or its predecessor in title, Lahaina Agricultural Company, Limited, had acquired title to all of said land or the right to acquire such title. We have already analyzed the facts upon which this claim is based and we now have only to apply the law to those facts.

As a general rule, in order that one may recover compensation for improvements made on another's land, it is necessary that he should have made such improvements in good faith while in bona fide adverse possession of the land under color of title. By good faith is meant an honest belief on the part of the occupant that he has acquired a good title to the property in question and is the rightful owner thereof. And for this belief there must be some reasonable grounds, such as would lead a man of ordinary prudence to entertain it. The honest belief on the part of the occupant must be induced by ignorance of fact and not ignorance of law. (*Bodkin* v. *Arnold,* 35 S. E. [W. Va.] 980; *Williamson* v. *Jones,* 43 W. Va. 562, 27 S. E. 411; *Bryan* v. *Councilman,* 106 Md. 380, 14 Ann. Cas. 1175; *Clark* v. *Levitt,* 166 N. E. [Ill.] 538; *Holstein* v. *Adams,* 10 S. W. [Tex.] 560; 31 C. J. 319 et seq.)

If petitioner in the case at bar had an honest but mistaken belief as to its relationship to the title to the land in question when it placed the improvements on said land it was not a mistake of fact but a mistake as to the legal effect of the facts with which it was thoroughly familiar. If petitioner did not know that Lahaina Agricultural Company, Limited, was at said time negotiating for the purchase of said land it could have had no belief based on the existence of that fact. Petitioner has, by the evidence, established the fact that shortly before it began the improvements Lahaina Agricultural Company, Limited,

opened negotiations for the purchase of said land and that after the completion of said improvements said Lahaina Agricultural Company, Limited, purchased an undivided interest in said land which was several years later conveyed to petitioner. It is also established by the evidence that at all of said times petitioner was the owner of 965 of the 1000 shares of the capital stock of said Lahaina Agricultural Company, Limited. Petitioner knew that at all of said times said Lahaina Agricultural Company, Limited, was a corporate entity of which it, the petitioner, was a mere stockholder. What honest but mistaken belief then could petitioner have had with reference to its relationship to said title? Certainly none except as to the legal effect of the facts established by the evidence, a synopsis of which we have set out above.

This was clearly a mistake of law and not of fact and therefore no matter how honest petitioner's belief was, ownership of said improvements cannot be based thereon.

A case upon which petitioner relies is that of *Guignard* v. *Corley,* 147 S. C. 12, 144 S. E. 586, 62 A. L. R. 533. The facts of that case, however, differ in at least one essential particular from the facts in this case. The principal honest but mistaken belief which Guignard had was that the parcel of land over which he had a valid license to build the spur tracks there involved adjoined his land upon which his brick manufacturing plant was situate whereas it was in fact separated therefrom by a 30-foot strip. This was clearly a mistake of fact and not of law. And even in that case Guignard was denied sole ownership of the improvements which he placed upon said 30-foot strip when he, like petitioner in this case, afterwards acquired an undivided interest in said strip and sued for partition. Guignard was, however, allotted the portion of said 30-foot strip improved by him and required to pay his opponents for their fractional interest in said improvements.

The determination by the circuit judge that the peti-

tioner was the sole owner of the structures and improvements upon the lands subject to partition was no doubt an important, if not the controlling, consideration in his conclusion that the lands were susceptible of partition in kind and was the cause of the direction to the commissioner thereto appointed to set off to the petitioner, as part of its share to which it was entitled, the land upon which the said structures and improvements had been placed. Holding as we do that the structures and improvements placed upon the land are not the sole property of the petitioner but, on the contrary, are the property of the parties hereto as tenants in common to the extent of their respective interests in the lands subject to partition, the decree must be reversed not alone as to its findings upon the issue of ownership but also as to its findings upon the issue of whether the lands are susceptible to partition in kind and the cause remanded for further hearing upon the latter issue.

Under the circumstances none of the collateral questions raised by the parties upon the main issue of whether the land and improvements are susceptible to partition in kind will be considered by us. We do not desire to even intimate in any way our impressions upon that issue. We cannot, however, due to the state of the record, refrain from concluding with the comment that evidence of value is of the greatest importance in determining whether property is susceptible of partition in kind and should be no less detailed, complete and comprehensive than the scope of the inquiry involved. Evidence of value is not alone material to the issues raised by the pleadings but to the issues raised by any suggested method of partition other than sale. This is especially so where, as here, the land subject to partition consists of more than one parcel differing in class, type and location; easements, appurtenances and rights of way, structures and improvements are involved, and the claim is made that certain of the lands have been

deprived of water rights to which they were anciently entitled.

This leaves one additional issue to be disposed of, namely, the taxation of costs by the trial judge against certain of the respondents, including the appellant.

Section 4756, R. L. 1935, is in part as follows : "All costs of the proceedings in partition shall be paid by the petitioner in the first instance, but eventually by all of the parties in proportion to their interests, except such costs which may be occasioned by contests as to particular shares or interests, which shall be charged against the particular shares or interests involved and be paid as determined by the result of the trial of such particular issue."

In view of the fact that the guardian *ad litem* for the minors demanded proof of all petitioner's allegations, it was necessary to require petitioner to establish its case on all of the issues by the evidence. So far as we are able to see from the record before us none of the evidence, the costs of which were taxed against the three respondents alone, could have been omitted even though said three respondents had stipulated the facts, the proof of which caused the expense. If, therefore, we assume that the contest was such a contest as is contemplated by the statute, we believe the circuit judge erred in taxing the cost against said respondents, especially in view of the conclusion we have reached as to the correctness of the circuit judge's decision on the controverted issue.

The decrees appealed from are reversed with instructions to the circuit court to take further proceedings consistent with the views herein expressed.

*E. Vincent* and *M. K. Ashford* for Victoria Kathleen Ward.

*Smith, Wild, Beebe & Cades* for petitioner.

*R. J. O'Brien* for the guardian *ad litem*.