289 P.3d 980

**Robert KUTKOWSKI, Plaintiff–Appellant/Plaintiff–Cross–Appellee,**

v.

**PRINCEVILLE PRINCE GOLF COURSE, LLC, a Delaware Limited Liability Company, Defendant–Appellee/Defendant–Cross–Appellant,**

and

**Doe Corporations 1–5, Doe Limited Liability Companies 1–5, Doe Partnerships 1–5, Doe Entities 1–5, John Does 1–5, and Jane Does 1–5, Defendants.**

No. 28826.

Intermediate Court of Appeals of Hawai'i.

March 20, 2012.

Margery S. Bronster, Rex Y. Fujichaku, (Bronster Hoshibata), and Joe P. Moss, on the briefs, for Plaintiff–Appellant/ Plaintiff–Cross–Appellee.

David W. Proudfoot, Dawn N. Murata, (Belles Graham Proudfoot Wilson & Chun, LLP) and Colleen Hanabusa, on the briefs, for Defendant–Appellee/ Defendant–Cross–Appellant.

Opinion of the Court by LEONARD, J.

Plaintiff–Appellant/Cross–Appellee Robert Kutkowski (**Kutkowski**) appeals from the Final Judgment entered on October 2, 2007 (**Judgment**), and challenges the Order Granting in Part and Denying in Part Defendant Princeville Prince Golf Course, LLC's Motion for Summary Judgment Filed May 11, 2007, Denying Plaintiff Robert Kutkowski's Motion for Summary Judgment Filed on June 1, 2007, and Ordering the Entry of Final Judgment Herein, entered on August 6, 2007 (**Summary Judgment Order**), by the Circuit Court of the Fifth Circuit (**Circuit Court**).[1] This case arises from a dispute over a right of first refusal contained in a lease agreement for a half-acre parcel that is part of a much larger undivided parcel, the owner of which, Princeville Corporation (**Princeville Corp.**), sold the parcel to Defendant–Appellee/Cross–Appellant Princeville Prince Golf Course, LLC. (**Princeville LLC**). At the time of the sale, Kutkowski was a holdover tenant. The case was resolved on cross summary judgment motions, with the Circuit Court concluding that the right of first refus-

al carried over to the holdover period, but that it was not triggered by the sale of the large undivided parcel.

On appeal, Kutkowski challenges the Circuit Court's conclusion that the right of first refusal was not triggered. In its cross appeal, Princeville LLC challenges the Circuit Court's conclusion that the right of first refusal carried over to the holdover period.

We affirm the Judgment, holding that: (1) when a lease for a specified term is not extended or renewed, and the lessee holds over after the expiration of the lease, unless otherwise agreed, Hawai'i law implies that the parties' rights and obligations with respect to that holdover tenancy continue as set forth in the expired lease agreement; (2) although a holdover tenancy continues subject to the conditions of that tenancy determined by the original lease, the law will not imply a continued obligation to sell the leased property, absent an expression of the lessor's agreement to continue such obligation during a holdover tenancy; (3) where, as in this case, a right-to-first-refusal provision is not expressly limited to the term of the lease, another lease provision expressly makes all "applicable" lease provisions applicable to a holdover tenancy, and nothing in the lease agreement renders the right-to-first-refusal provision inapplicable to the holdover tenancy, the right to first refusal is applicable during the holdover tenancy; (4) generally, the desire to sell a large tract of land may not be taken as a manifestation of the seller's intention or desire to sell a smaller, undivided, parcel contained within it, so as to convert a right of first refusal on the smaller parcel into an exercisable option for its purchase; (5) Kutkowski's requested relief of specific performance would require a wholesale reformation of the parties' agreement and, *inter alia,* require judicial establishment of a price term, which would directly contradict the bargained-for rights of the parties; (6) Hawai'i courts will not allow a property owner and a purchaser to, in effect, destroy a bargained-for right of first refusal before its expiration and, in many circumstances, would order an injunction of a prospective sale or the rescission and/or reconveyance of a com-

1. The Honorable Kathleen N.A. Watanabe presided.

pleted sale, in order to maintain the status quo, preserving a lessee's right of first refusal until its exercise, waiver, or termination at the expiration of the lease; and (7) under the circumstances of this case, including that the lessee holding the right of first refusal did not seek to enjoin or rescind the sale of a large undivided parcel of land that neither triggered nor destroyed a right of first refusal applicable to a small portion of that land, the requested relief of specific performance of the right of first refusal was properly denied.

## I. BACKGROUND

Prior to 1998, Princeville Corp. owned an approximately 1,040–acre parcel of land located on the North Shore of Kaua'i, above Anini Beach (**Master Parcel**). Kutkowski's licensed premises (**Premises**) is an approximately one-half acre portion of the Master Parcel, located at 3731A Anini Road, Kilauea, Kaua'i, Hawai'i.

In 1971, Kutkowski entered into an agreement to sublease the Premises from John Kai, the tenant of the Premises at the time. On November 1, 1984, after Mr. Kai's death, Kutkowski entered into an Agricultural Lease for the Premises, with Princeville Development Corp.,[2] for a five-year term ending on November 1, 1989, with a monthly rent of $80.

Prior to the expiration of the Agricultural Lease, Kutkowski and his wife, Janet Kutkowski (collectively, **the Kutkowskis**), wrote a letter to Michael Y. Loo (**Mr. Loo**), then the Vice President of Real Estate and Development for Princeville Development Corp., dated October 5, 1989, to request a renewal of the lease for another five-year term and an option to purchase the Premises. Kutkowski testified in a deposition that he did not remember whether he signed a new lease, but between 1989 and 1998 the Kutkowskis remained on the Premises, paying $200 per month for rent.

In 1998, Mr. Loo received another letter from the Kutkowskis, dated March 28, 1998, expressing their desire to negotiate a fixed

rent of $750 per month and also include in the lease an option to purchase the Premises. This letter stated, "If this property is dividable from the large amount of property Princeville owns, we would be very serious about making a market value offer on this parcel."

Mr. Loo received a memorandum from William Powell (**Mr. Powell**), of Wm. Powell Associates, Ltd., the managing agent for the Premises, dated April 26, 1998. The memorandum stated, in relevant part:

This will confirm our verbal conversation regarding the above tenant [Robert Kutkowski]. Their lease will be for five years at $750.00 per month, net to the Landlord.

The tenant will be provided a first right of refusal in case of subdivision and sale of the property he occupies. This first right of refusal shall not survive termination of the lease.

Kutkowski sent a letter addressed to Mr. Powell, dated April 30, 1998, and copied Mr. Loo. Kutkowski expressed in his letter that he would like to retract his initial acceptance of the $750 monthly rental rate and have it lowered to $550 per month with a $50 increase each year for 5 years, or a fixed monthly rent of $600. He also stated, "We are still very interested in keeping the first option to buy this property in the lease agreement."

Kutkowski sent another letter to Mr. Powell, dated June 15, 1998, with a copy to Mr. Loo. In the letter, Kutkowski confirmed that he accepted the new rent increase proposed in a letter he received on June 3rd and he stated, "Also I hope the new Lease Agreement will state an option for me to purchase the property if it's available someday."

On August 23, 1998, the Kutkowskis entered into a License Agreement with Princeville Corp. in which Princeville Corp. granted the Kutkowskis a license for a five-year term to continue to occupy and use the Premises. The License Agreement commenced on May 1, 1998, and expired on April 30, 2003. The

---

**2.** Although the record is unclear, it appears that Princeville Development Corp. is an affiliate of Princeville Corp.

rent was set at $600 per month, increasing each year to an amount of $900 per month for the last year of the term. The License Agreement included a clause captioned "Option to Purchase," which expressly reserved to the licensor, Princeville Corp., the right to "sell the licensed premises" during the term of the License Agreement and provided Kutkowski a right to purchase the Premises if Princeville Corp. decided to sell. The offer would be subject to terms and conditions provided by Princeville Corp. Paragraph 2 of the License Agreement sets forth this term, more properly characterized as a right of first refusal (**Right of First Refusal**), as follows:

> 2. *Option to Purchase:* Licensor [Princeville Corp.] expressly reserves the right to sell the licensed premises during the term of this license and to place such signs and notices on or about the premises for such purpose, subject only to the rights of the Licensee [the Kutkowskis] contained herein. In the event Licensor decides to sell the premises, it shall be first offered to Licensee on terms and conditions provided by Licensor; PROVIDED, HOWEVER, that Licensee shall have at all times faithfully and punctually performed all of the covenants and conditions of this agreement on the part of Licensee to be performed. Licensee shall have sixty (60) days to accept the Licensor's offer or make a counter offer; PROVIDED, HOWEVER, that if no sales contract is executed within one hundred twenty (120) days after Licensor's initial offer, (1) Licensor shall be free to offer the premises for sale to the general public and (2) this license agreement shall be automatically amended with occupancy to continue on a month to month term. Should the premises be thereafter sold during the term of the month to month license, Licensor shall give Licensee forty-five (45) days prior notice of termination of this license, upon which Licensee shall relinquish all rights hereunder.

The License Agreement also includes a holdover provision in Paragraph 22 (**Holdover Provision**), which reads as follows:

> 22. *Effect of Licensee's holding over:* Any holding over after the expiration of the

term of this agreement, with consent of Licensor, shall be construed to be a license from month to month, at the same rate as required to be paid by Licensee for the period immediately prior to the expiration of the term hereof, and shall otherwise be on the terms and conditions herein specified, so far as applicable.

The License Agreement did not contain any provision for renewal or extension. Upon the expiration of the License Agreement, the parties did not execute a new lease, or renew or extend the License Agreement.

On May 1, 2003, Kutkowski's tenancy became a month-to-month tenancy by way of holdover. Kutkowski moved his primary residence to another house in the Princeville area in 2003, but his son continued to reside on the Premises.

On July 14, 2004, Princeville Corp. and Princeville Associates, LLC (**Princeville Associates**) entered into a Purchase and Sale Agreement (**Sale Agreement**). Princeville Corp. sold to Princeville Associates, pursuant to the terms of the Sale Agreement, resort holdings located at the Princeville Resort on Kaua'i, including the Master Parcel, buildings, structures, and other improvements, including a hotel, golf course, clubhouse, shopping center, and an airport. The Sale Agreement also included tangible and intangible property, and contracts and leases located at the Princeville Resort on Kaua'i.

Pursuant to the terms of the Sale Agreement, Princeville Associates assigned ownership of the Master Parcel to Princeville LLC. Princeville Corp. and Princeville LLC also entered into an Assignment and Assumption Agreement pertaining to certain contracts and leases in which Princeville LLC agreed to accept the assignment, grant, conveyance, and transfer of all contracts and agreements relating to the ownership, management, or operation of the Master Parcel (**Assumption Agreement**).

Kutkowski received a memorandum, dated September 6, 2004, from Mr. Powell, who had apparently changed his employment to Asset Realty Corporation, but remained as Prince-

ville Corp.'s real estate agent. The memorandum stated, in relevant part:

> Attached is an amendment to the license agreement Princeville Corporation has with you. Princeville has decided to eliminate any Option to Purchase from its existing month to month tenancy or license agreements. The enclosed amendment reflects this change.
>
> Can you please have the agreement executed and returned to me?

The attached Amendment to License Agreement (**Amendment**) stated, in relevant part:

> THIS AMENDMENT TO LICENSE AGREEMENT (The "Amendment") is made and entered effective as of September 1, 2004, by and between **PRINCE-VILLE CORPORATION**, a Colorado corporation, ("Licensor") and **Robert Kutkowski** ("Licensee").
>
> . . . .
>
> NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties hereto, Licensor and Licensee hereby agree to amend the License Agreement as follows:
>
> 1. Paragraph 2, Option to Purchase shall be deleted in its entirety.
>
> 2. The License Agreement shall continue on a month to month basis until either party gives notice to the other party to terminate this License Agreement.
>
> 3. The effective date of this Amendment to License Agreement is August 1, 2004.
>
> EXCEPT AS EXPRESSLY PROVIDED HEREIN, all other terms and conditions of the License Agreement shall remain as is and in full force and effect.

Kutkowski refused to sign or return the Amendment. Kutkowski informed Princeville Corp. by letter, dated October 25, 2004, that he desired to exercise the "Option to Purchase" and would offer $250,000 for the Premises. It is undisputed that Princeville Corp. did not first offer to sell the Premises to him, and that neither Princeville Corp. nor Princeville LLC had accepted his offer to purchase the Premises.

The sale including the Master Parcel closed in March 2005. It appears that Kutkowski continued to pay the monthly rent for the Premises and that Princeville LLC accepted the payments.

On January 10, 2005, Kutkowski filed suit against Princeville Corp. alleging a single claim for specific performance of the right of first refusal in the License Agreement. On January 12, 2005, Kutkowski filed a Notice of Pendency of Action with the Bureau of Conveyances. Through an August 3, 2005 stipulation, Princeville Corp. was dismissed as a defendant and replaced by Princeville LLC (**Stipulation**). On October 20, 2005, Kutkowski filed a First Amended Complaint against Princeville LLC, again alleging a single claim for specific performance of the right of first refusal in the License Agreement, but seeking the relief from Princeville LLC.

On November 18, 2005, Princeville LLC filed an answer to the First Amended Complaint, and a Counterclaim for Declaratory Relief asking that the Circuit Court declare that the License Agreement was ineffective in conveying to Kutkowski any rights in the Premises.

On May 11, 2007, Princeville LLC filed its motion for summary judgment, and a request to expunge Kutkowski's notice of pendency of action, arguing that the right of first refusal expired by its own terms on April 30, 2003, and did not carry over to the holdover period, or alternatively, if the Circuit Court found that the right of first refusal had not terminated, summary judgment should still be granted to Princeville LLC because (1) the offering for sale of the Master Parcel by Princeville Corp. to Princeville Associates did not constitute a decision to sell the Premises and, thus, the right of first refusal was not triggered, and/or (2) it would have been legally impossible to perform the terms of the right of first refusal making it void and unenforceable.[3]

On June 4, 2007, Kutkowski filed his motion for summary judgment, arguing that the

---

**3.** Although, on appeal, the parties present their arguments on this point, we need not address it.

right of first refusal survived the expiration of the License Agreement, was still valid in the holdover tenancy, and was triggered by the Sale Agreement, and he sought a declaration of rights and specific performance.

On June 21, 2007, the Circuit Court heard the cross motions for summary judgment.

On August 6, 2007, the Circuit Court entered the Summary Judgment Order, concluding that the right of first refusal survived the expiration of the License Agreement and carried over into the holdover tenancy, but that it was not triggered by the Sale Agreement because the decision to sell the Master Parcel did not constitute a decision to sell the Premises. On October 2, 2007, Final Judgment was entered.

On November 1, 2007, Kutkowski filed a notice of appeal; Princeville LLC timely filed a notice of cross-appeal.

## II. *POINTS OF ERROR*

The appellant and cross-appellant each raise a single point of error on appeal. Notably, both parties argue that the Circuit Court erred as a matter of law with respect to some aspect of the Summary Judgment Order. Neither party contends in their respective points of error that there were any genuine issues of material fact in dispute.

Kutkowski raises the following point of error:

The Circuit Court erred when it denied equitable relief to Kutkowski because it held that the sale of the Master Parcel did not constitute a 'decision to sell' the Premises which would trigger Kutkowski's right of first refusal under paragraph 2 of the Agreement.

Princeville LLC raises the following point of error:

Did the Circuit Court err in denying in part [Princeville LLC's] Motion for Summary Judgment in its Order dated August 6, 2007, when it stated that the Right of First Refusal did not expire on April 30, 2003 but was carried over to the period that Kutkowski was a holdover tenant even though there was no right of renewal in the License Agreement?

## III. *APPLICABLE STANDARDS OF REVIEW*

The appellate court reviews the trial court's grant of summary judgment *de novo*. *Kamaka v. Goodsill Anderson Quinn & Stifel*, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008). "Under the *de novo* standard, we examine the facts and answer the question without being required to give any weight to the circuit court's answer to it." *Hawaii Ventures, LLC v. Otaka, Inc.*, 114 Hawai'i 438, 457, 164 P.3d 696, 715 (2007) (internal quotation marks, citations, and brackets omitted).

[The Hawai'i Supreme Court] has stated that " '[a]s a general rule, the construction and legal effect to be given a contract is a question of law.' " *Found. Int'l, Inc. v. E.T. Ige Const., Inc.*, 102 Hawai'i 487, 494–95, 78 P.3d 23, 30–31 (2003) (quoting *Hanagami v. China Airlines, Ltd.*, 67 Haw. 357, 364, 688 P.2d 1139, 1144 (1984)). Accordingly, "[a]bsent an ambiguity, [the] contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech." *Id.* at 495, 78 P.3d 23 (brackets in original, citation omitted).

*Koga Eng'g & Constr., Inc. v. State of Hawai'i*, 122 Hawai'i 60, 72, 222 P.3d 979, 991 (2010).

The relief granted by a court in equity is discretionary and will not be overturned on review unless the circuit court abused its discretion. An abuse of discretion occurs when the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*Ueoka v. Szymanski*, 107 Hawai'i 386, 393, 114 P.3d 892, 899 (2005) (internal quotation marks, citations, brackets, and ellipsis omitted).

## IV. *DISCUSSION*

Kutkowski's claim for specific performance is dependent upon the continued enforceability of the Right of First Refusal during the holdover tenancy. Accordingly, we turn first to this issue, which is raised in the cross-appeal.

### A. *The Terms of the Holdover Tenancy*

Princeville LLC argues that Hawai'i courts should adopt the rule prevailing in the "majority" of jurisdictions: when a lease agreement is not renewed or extended, a right of first refusal therein (or an option to purchase) is terminated upon the expiration of the term of the lease agreement and does not carry over to the holdover period. Kutkowski argues, *inter alia*, that Princeville LLC's position is directly refuted by Hawai'i precedent and the "majority" rule in other jurisdictions: lease terms and conditions, including provisions for an option or right of first refusal, continue into a holdover period. A careful reading of the case law suggests that differences in the drafting of lease terms may account for the varying outcomes, perhaps as much as, if not more than, differences in judicial philosophy. Thus, we begin with a close examination of the operative terms of the License Agreement.

As set forth above, the Holdover Provision states:

> 22. *Effect of Licensee's holding over:* Any holding over after the expiration of the term of this agreement, with consent of Licensor, shall be construed to be a license from month to month, at the same rate as required to be paid by Licensee for the period immediately prior to the expiration of the term hereof, and *shall otherwise be on the terms and conditions herein specified, so far as applicable.*

(Emphasis added.)

This provision sets out several covenants governing the holdover tenancy. First, any continued tenancy is conditioned upon the lessor's consent. Thus, the lessee has no right to renew or extend the period of the tenancy, or to continue its use and occupancy of the Premises, without the consent of the lessor. That said, no formality such as a further written agreement is required; so,

the lessor's consent to the lessee's continued use and occupancy of the Premises could be verbal or implied from the parties' conduct.

Second, the holdover tenancy is agreed to be a month-to-month tenancy, thus requiring the lessor to provide at least forty-five days, and the lessee to provide at least twenty-eight days, advance written notice of termination of the tenancy. *See* HAWAII REVISED STATUTES § 521–71(A) & (B) (2006) (LANDLORD-TENANT CODE NOTICE REQUIREMENT).[4]

Third, the Holdover Provision sets the rent, for continued month-to-month occupancy with the lessor's consent, at the same rate as required to be paid by the lessee for the period immediately prior to expiration of the License Agreement.[5]

Finally, the Holdover Provision states that any holding over "shall otherwise be on the terms and conditions herein specified, so far as applicable." Thus, the parties expressly agreed to maintain the terms and conditions of the License Agreement during a holdover tenancy, *so far as such terms are applicable* to the holdover tenancy. Princeville LLC argues that: (1) the Right of First Refusal is not "applicable" because it could not be applicable to that right as it is drafted in paragraph 2 of the License Agreement; (2) the Right of First Refusal states that it is applicable only during the term of the License Agreement; and (3) based on the majority rule in other jurisdictions, where there is no (lessee's) right to renew in a lease agreement, the Right of First Refusal is not applicable to a holdover tenancy. Kutkowski argues that: (1) under the clear and unambiguous language of the License Agreement, the Right of First Refusal is applicable to the holdover tenancy; (2) under Hawai'i law, the terms and conditions of a written lease agreement continue to be applicable during a holdover tenancy;[6] and (3) under the ma-

---

4. As the lessee's use of the Premises was residential, and paragraph 6 of the License Agreement expressly provides that the Premises are used for residential purposes, the notice requirements in the Hawai'i Residential Landlord–Tenant Code are applicable. *See* HRS § 521–31(a) (2006) (limiting parties' right to waive rights or remedies under HRS Chap. 521).

5. As the issue is not before us, we need not address whether, pursuant to HRS § 521–71(c), a different rate of rent might be applicable after a proper notice of termination.

6. We note that, in his Opening Brief, Kutkowski argues both that this is a case of first impression and that the outcome is controlled by applicable Hawai'i law. We conclude that the Hawai'i ap-

jority rule, a right of first refusal is applicable when a lease is extended in accordance with its terms and, as here, an extension by way of a holding over fits within this rule.

Princeville LLC's two contract-interpretation arguments concerning whether the Right of First Refusal is "applicable" are both focused on the wording of the Right of First Refusal:

> Licensor [Princeville Corp.] expressly reserves the right to sell the licensed premises during the term of this license.... In the event Licensor decides to sell the premises, it shall be first offered to Licensee on terms and conditions provided by Licensor.... Licensee shall have sixty (60) days to accept the Licensor's offer or make a counter offer; PROVIDED, HOWEVER, that if no sales contract is executed within one hundred twenty (120) days after Licensor's initial offer, (1) Licensor shall be free to offer the premises for sale to the general public and (2) this license agreement shall be automatically amended with occupancy to continue on a month to month term. Should the premises be thereafter sold during the term of the month to month license, Licensor shall give Licensee forty-five (45) days prior notice of termination of this license, upon which Licensee shall relinquish all rights hereunder.

In the first argument, Princeville LLC argues that the parties clearly intended that the Right of First Refusal would only apply to the five-year term, because they made specific provisions to change the five-year term to a month-to-month term if a sales contract was not executed within a certain time period by the lessee. Thus, Princeville LLC argues, if the parties had intended that the Right of First Refusal be carried over to a holdover tenancy, paragraph 2's requirement that the lease term be amended to a month-to-month tenancy "would be surplus and in fact wouldn't make sense during a holdover because under paragraph 22, the holdover period is already month-to-month."

The logic of this argument is not sound. Paragraph 2 expressly reserves the lessor's right to sell the Premises during the term of the License Agreement. However, if the lessor desires to sell the Premises, the lessor has to offer it to the lessee on terms and conditions provided by the lessor. The lessee can accept or counter within sixty days of the lessor's offer. If a sales agreement is not completed within one hundred and twenty days of the lessor's offer, then the lessee's right of first refusal is no longer effective and the License Agreement is converted from a five-year term to a month-to-month tenancy. Clearly, the intent of the language is to truncate the five-year term of the License Agreement, by converting it to a month-to-month tenancy, if the lessor decides to sell the Premises during the five-year term and no sales contract with the lessee is signed within the specified period. The fact that this conversion to a month-to-month tenancy automatically takes place at the expiration of the five-year term does not render it surplusage in the context of an earlier sale of the Premises. While the parties were free to contract otherwise, the parties presumably perceived a benefit to shortening their mutual commitments if the Premises were being offered, and possibly sold, to a third party prior to the end of the five-year term. Thus, we reject Princeville LLC's argument that this clause in the Right of First Refusal necessarily causes the Right of First Refusal to be "not applicable" to the holdover tenancy.

Princeville LLC's other contract-construction argument is that the Right of First Refusal in paragraph 2 "says it is for the 'term of the license' which is a five-year term[.]" It is notable, however, that Princeville LLC does not argue that paragraph 2 explicitly limits the exercise of the Right of First Refusal to the five-year term or that the Right of First Refusal is expressly made not applicable to a holdover tenancy. Nothing in paragraph 2, or any other provision of the License Agreement, expressly states that the lessee's right to exercise the Right of First Refusal expires at the end of the initial five-year term or expressly states that the Right of First Refusal is "not applicable" during a holdover tenancy.

pellate courts have not squarely addressed the issue.

Instead, Princeville LLC in effect asks this court to construe the License Agreement's silence under the jurisprudence established in other states. We will return to the issue of the applicable jurisprudence right after we review Kutkowski's contract-construction argument.

Kutkowski contends that the clear and unambiguous language of paragraph 2 "as a whole" does not limit the Right of First Refusal to the initial five-year term. While it is true that there is no such limiting language in paragraph 2, the intent to be gleaned from the lack of attention to this issue in the wording of paragraph 2 is less immediately clear to this court than it is to Kutkowski.[7] Kutkowski also argues, perhaps more persuasively, that a natural and logical reading of the Holdover Provision and the License Agreement as a whole supports the conclusion that all terms and conditions of the License Agreement are "applicable" to the holdover tenancy, except for the ones that conflict with the expressly stated terms of the Holdover Provision, in particular the five-year term and the escalating monthly rent.

Implicit in both parties' arguments is the possibility that the License Agreement might not clearly and unambiguously reflect an intent to continue or discontinue the Right of First Refusal into a holdover tenancy.[8] Hence, both parties argue that applicable case law supports their position.

We begin with the two Hawai'i cases cited by Kutkowski, who argues that "Hawai'i law provides for the extension of the Right of First Refusal into a holdover tenancy[.]" (Capitalization altered.) *Pioneer Mill Co. v. Ward*, 34 Haw. 686, 687–88 (1938), involved an appeal in a partition action in which the petitioner, Pioneer Mill Company, Limited (**Pioneer**) claimed an undivided 716/896 in-

terest in six 'āpanas in the 'ili of Waihele, located in the valley of Honokowai on Maui. Pioneer contended, *inter alia*, that it had made extensive improvements to the land, including the construction of buildings, railroads, ditches, tunnels, and pipelines based on its honest belief that it or its predecessor-in-interest had acquired title or a right to acquire title and prayed for a partition in kind awarding Pioneer the lands that it had improved. *Id.* at 689. The circuit court, in large part, adopted Pioneer's position and decreed, *inter alia*, that all of the structures and improvements were the sole property of Pioneer. *Id.* at 690. Upon review of the circuit court's final decree of partition, the Hawai'i Supreme Court observed that, in 1896, Pioneer had leased the land (all but one 'āpana of the subject land) for a term of twenty years from the then owners, including the respondents' predecessors-in-interest, and, at the end of the lease, had continued to occupy said lands and to pay rent to the owners. *Id.* at 700. The lease included a term wherein Pioneer agreed "at the end or earlier determination of this term to peaceably quit and surrender the demised premises with the improvements to the said Lessors[.]" *Id.* (internal quotation marks omitted). The supreme court concluded that, contrary to Pioneer's contention, Pioneer's holding over after the term of the lease rendered Pioneer to be "a tenant from year to year subject to the tenancy being determined by proper notice." *Id.* (citations omitted). The court further concluded:

> The tenancy from year to year, which resulted from the holding over by petitioner after the expiration of the 1896 lease, was subject to the same covenants and agreements contained in that lease. . . . One of the covenants was, as we have seen,

---

7. Although never arguing that the License Agreement is ambiguous, Kutkowski includes a weak argument that, if the agreement was ambiguous, parol evidence shows the parties' intent was to extend the Right of First Refusal to the holdover period. However, Kutkowski points to *no* evidence that there was ever any agreement, mutual intent, or even discussion of the issue. The mere fact that the "Option to Purchase" was considered by Kutkowski to be an important part of the parties' agreement does not reasonably lead to the conclusion that the parties reached an agree-

ment as to the applicability of the Right of First Refusal during a holdover tenancy.

8. We also infer, from the lack of cogent argument and evidence on the point, that parol evidence on the issue of parties' intent as to the continuation or discontinuation of the Right of First Refusal would not be enlightening, *i.e.*, it was simply not addressed by the parties, even outside of the written agreement.

to surrender the demised premises with improvements to the lessors[.]

*Id.* at 701 (citations omitted). As the subject improvements were placed upon the land during the time that Pioneer was in possession as a holdover tenant, the issue of ownership of the improvements was held to be determined by the terms of the lease and the judgment of the circuit court awarding sole ownership to Pioneer was vacated. *Id.* at 704, 707.

In *Schimmelfennig v. Grove Farm Co.*, 41 Haw. 124, 126 (1955), the Hawai'i Supreme Court reviewed the dismissal of an action for the breach of a covenant to restore leased premises to substantially the same condition as existed at the inception of the lease. The lessor's suit was dismissed, *inter alia,* because the action was barred by the applicable statute of limitations. *Id.* at 129. The supreme court reiterated the principle enunciated in *Pioneer Mill,* "that a tenancy from year to year which results from a holdover beyond the termination date of a lease for a term of years becomes subject to the identical covenants and agreements contained in the expired lease." *Id.* at 132 (citation omitted). The court concluded, however, that the lessor's suit was barred because the cause of action for a breach of the covenant to restore the leased premises to the condition at the beginning of the lease accrued at the expiration of that lease, and having failed to sue within the statutory period thereafter, the lessor's suit was forever barred. *Id.* at 135.[9] Later in the supreme court's opinion (in conjunction with the review of whether a transferee of a reversion can recover for a breach of a covenant to repair in the absence of an assignment of the cause of action), the court stated the holdover ruling a bit more narrowly:

In the absence of a different rule, created by statute or by express contract, where a tenant holds over after the expiration of a written lease, the law implies that he holds over subject to the terms of the lease *as far as the same are applicable to a monthly letting.*

*Id.* at 139 (emphasis added; citation omitted).

In sum, Hawai'i case law provides a general rule that, in the absence of an agreement (or statute) to the contrary, the covenants and agreements in a written lease carry over into a holdover tenancy. The *Schimmelfennig* decision, however, suggests that some kinds of covenants and agreements might not be applicable to a "monthly letting" or month-to-month tenancy. We are also mindful that in *Pioneer Mill* and *Schimmelfennig,* the supreme court was not squarely faced with the issue of whether an option to purchase the leased premises would carry over into a holdover tenancy in the same way as the covenants at issue in those cases. Thus, we will consider the decisions of and distinctions made by courts in other jurisdictions, as the parties have urged us to do.

First, we consider the authorities that Princeville LLC cites for the proposition that a right of first refusal does not carry over to a holdover tenancy, four cases and a treatise on landlord-tenant law.

In *Power Test Petroleum Distributors v. Baker–Tripi Realty Corp.,* 126 Misc.2d 228, 481 N.Y.S.2d 619, 620 (N.Y.Sup.Ct.1984), a holdover tenant sought to enforce a right of first refusal set forth in a lease agreement. After the lease terminated, the property was sold and the holding-over tenant was asked to vacate the premises. *Id.* at 620. The tenant instead attempted to exercise the right of first refusal. *Id.* The lease included the following terms:

31. *If, at any time, during the term of this lease or any extension or renewal thereof,* lessor, receives a bonafide offer to lease the demised premises ... or a bonafide offer for the purchase of said premises, and lessor desires to accept such offer, lessor shall immediately submit to lessee a written copy of such offer ... and lessee shall have thirty (30) days after receipt thereof in which to elect to lease or pur-

9. The evidence showed that the subject improvements, a house and stone wall, were "nonexistent" at the beginning of the holdover period following the initial twenty-year lease. *Schim-* *melfennig,* 41 Haw. at 133. Therefore, those improvements were not the subject of covenants that continued into the holdover tenancy. *Id.*

chase said premises upon the sale terms and conditions contained in such offer.

32. *If*, at the expiration or termination of the lease, or any extension thereof, *lessee shall holdover* for any reason, the tenancy of lessee thereafter shall be from *month-to-month only and be subject to all other terms and conditions of the lease,* in the absence of a written agreement to the contrary.

*Id.* at 621 (emphasis added).

Based on these lease provisions and prior cases in that jurisdiction, the New York court concluded:

The court finds that *under the express provisions of the lease that the option was valid only during the term* of the lease and therefore expired with the expiration of the lease on December 11, 1983, *the option did not carry over* into the month-to-month tenancy.

*Id.* (citations omitted; emphasis added). Thus, based on the time limit set in the right of first refusal—"during the term of this lease or any extension or renewal thereof"—the *Power Test* court concluded that the right of first refusal did not carry over into the holdover tenancy, notwithstanding the agreement that a holdover tenancy would be subject to the terms and conditions of the lease.

The Supreme Court of New Hampshire reviewed, in *Carroll v. Daigle,* 123 N.H. 495, 463 A.2d 885 (1983), the rights of holdover tenants with respect to an option to purchase contained in a written lease with no renewal provision. The option provision in the subject lease provided, in relevant part: "At any time during the term of this lease, ... Lessee ... may purchase the demised premises...." *Id.* at 886. The lease expired, the tenants continued to live in the house, and later attempted to exercise the option. *Id.* The New Hampshire court declared that the holdover tenancy "continues upon the same terms, so far as they are applicable, of the previous lease." *Id.* at 887 (citations, internal quotation marks, ellipses, and brackets omitted). Nevertheless, the court concluded that the option to purchase was not exercisable during the holdover tenancy. *Id.* at 888.

The court explained its rejection of the tenants' claim:

A holdover tenancy on the same terms as in the original lease is generally recognized as a *new* landlord-tenant relationship, which is distinct from the continuation of a tenancy based upon exercise of a renewal term of the lease or upon a subsequent express agreement between the parties.... Treating a holdover tenancy as a new tenancy is consistent with the fact that, at the outset of the holdover tenancy, the landlord may elect to treat the tenant as a trespasser, evict him or hold him as a tenant....

. . . .

More persuasive, however, are the decisions of other jurisdictions which hold that a purchase option which may be exercised only during the term of the lease does not carry over into the holdover tenancy. *These decisions are based on the fact that a provision which is expressly limited to the effective period of the lease cannot be considered to be applicable to the new holdover tenancy....* Additionally, other courts have reached the same conclusion, that a purchase option expires with the written lease, by reasoning that the option provision was an independent covenant which does not become one of the terms of the holdover tenancy....

Despite the plaintiffs' claim that the parties intended the repurchase option to continue as a term of the holdover tenancy, *a plain reading of the option clause militates against such an interpretation.* The option was expressly made applicable 'during the term of this lease'; it was also, by its terms, supported by 'separate consideration.' These factors, combined with the fact that the right to exercise the repurchase option was conditioned upon 'all rental obligations ... [being] current, ... lead us to the conclusion that the option could not reasonably be considered to be a term of the *holdover* tenancy.

The reference in another clause of the lease to the landlord's reasonable rights of entry and inspection 'during the term of this lease and any renewal thereof' does not compel the conclusion either that the

parties intended or anticipated a *renewal* of the original lease upon all its terms, or that the holdover tenancy could be construed as such a renewal.

*Id.* at 887–88 (citations and some internal quotation marks omitted; some emphasis added).

Thus, the New Hampshire Supreme Court was most persuaded by the reasoning that a provision which is *expressly* limited to the effective period of a lease cannot be considered to be applicable to a holdover tenancy.

The third case relied upon by Princeville LLC is *Nevala v. McKay,* 178 Mont. 327, 583 P.2d 1065, 1068 (1978), a Montana Supreme Court decision holding, *inter alia,* that a right of first refusal does not carry over into a holdover tenancy. The basis for the Montana court's decision was as follows:

> We recognize that a few jurisdictions have allowed holdover tenants to exercise an option to purchase or right of first refusal during the holdover period, but by far the greater weight of authority is that such option or right cannot be exercised by a lessee holding over after the expiration of the lease....
>
> One of the grounds often advanced for a decision that a purchase option may not be exercised during a holdover period is articulated as follows:
>
> > The option is a covenant which is separate from and independent of the lease, and, not being one of the terms of tenancy, is not extended into the holdover period and cannot be exercised during such period.
>
> It was this rationale that we adopted in arriving at our decision in *Miller v. Meredith* [149 Mont. 125, 423 P.2d 595 (1967) ], ..., the case we hold controlling here. In *Miller,* the lease provided: 'It is further agreed that Raymond Miller shall have the right of option should the lands be for sale.' The question before the Court was whether a tenant holding over can exercise

such an option. We held that an option to purchase does not carry over into a holdover tenancy because the lease and the option are distinct agreements.... We apply the same reasoning here.

*Id.* (citations, some internal quotation marks, and ellipses omitted). Thus, Montana is one of the jurisdictions that views the option to purchase as a separate, independent covenant because it is not a term of tenancy, *i.e.,* not a necessary condition of a landlord-tenant relationship and, therefore, not applicable to a holdover tenancy.

The fourth case noted by Princeville LLC is *Ebrecht v. Ponchatoula Farm Bureau Ass'n,* 498 So.2d 55 (La.App.1987). In *Ebrecht,* the Louisiana appellate court rejected the lessee's contention that he was entitled to specific performance of a right of first refusal in an expired lease agreement. *Id.* at 57. Although it appears from the context of the case that the lessee may have been a holdover tenant of the leased dock and loading area adjacent to a building that he owned, that circumstance was not discussed or even mentioned by the court in reaching its decision. *Id.* Instead, the court observed that the lease did not include an option to renew, the lessee's failure to attempt to negotiate a new lease indicated that the parties intended for the "option" to expire at the end of the lease term, and "[w]hen the lease terminated by its own terms, the right of first refusal also terminated." *Id.* (internal quotation marks omitted). It appears to this court that the Louisiana court based its conclusion on its reading of the subject lease agreement, rather than on a broader proposition of law.

Finally, Princeville LLC cites "Robert S. Schoshinski, *American Law of Landlord and Tenant* (1980)"[10] for the "prevailing view" that in the absence of a renewal provision, or if a lessee fails to timely exercise a right of renewal, a right of first refusal in a lease

---

**10.** While noting our appreciation for Professor Schoshinski's comprehensive treatment of landlord-tenant law in this treatise, we also note that this scholarly work is 910 pages long, even without consideration of the 941–page (most recent) cumulative supplement (which includes an additional 339–page table of cases). Thus, the inclusion of a page number (or section number) would not only have satisfied the requirements of Hawai'i Rules of Appellate Procedure Rule 28(b)(1), it would have been helpful to this court.

does not carry over to a holdover tenancy. This treatise reports, *inter alia:*

> If the duration of an option to purchase is not specified, it must be exercised during the existence of the tenancy. Although the decisions are not entirely in accord, it is generally held that when a tenancy is extended pursuant to an option to renew, a purchase option in the original lease is exercisable during the renewal term. This is usually not the result when the tenant's continued possession is pursuant to a new lease. Unless the new agreement refers to and extends the terms of the original lease, the option to purchase expires with the original tenancy. Similarly, when a new tenancy is created by the landlord's consent to his tenant's holding over at the expiration of a lease, the prevailing view is that an option to purchase is not extended, although there is some authority to the contrary.

ROBERT S. SCHOSHINSKI, AMERICAN LAW OF LANDLORD AND TENANT § 9:11, at 624–26 (1980 & Supp. 2011) (footnotes, including citations, omitted). In a footnote, SCHOSHINSKI adds:

> Although it is often stated that the holdover tenancy is on the same conditions and terms as the original tenancy, the courts in excluding the option to purchase from the new tenancy, have limited the carryover of the original terms to those covenants that are necessary to give effect to the new holding.

SCHOSHINSKI, *supra*, at 626 n. 26 (citing *Wanous v. Balaco*, 412 Ill. 545, 107 N.E.2d 791 (1952)). The Illinois Supreme Court in *Wanous* explained its reasoning:

> We believe, however, that even though a purchase option is held to be an integral part of a lease and, therefore, renewed when the lease is renewed, it is not such a provision as will be incorporated in a year to year tenancy created by operation of law. Not every provision in a written lease is made a part of a holdover tenancy-only those terms applicable to the new condition of things are so treated.... We believe that *the option to purchase for a certain sum 'during the term of this lease' is no such a provision as is applicable to*

> *the new tenancy and the new condition of things.*

*Wanous,* 107 N.E.2d at 793 (citation omitted; emphasis added).

While variations in rationale exist, a distinct jurisprudential theme emerges from these authorities. Yes, they support the proposition that an option to purchase or a right of first refusal generally does not carry over into a holdover period. However, in most instances, the courts have reached this conclusion based on their interpretation of the particular lease terms presented. *See also, e.g., Wright v. Barclay,* 151 Neb. 94, 36 N.W.2d 645, 648 (1949) ("[O]ptions should be strictly construed and not extended beyond the express provision thereof. If the parties to a lease desire that an option contained therein should extend beyond the term thereof, to a tenant holding over, they can easily use apt language to express that purpose but the law should not, by implication, enlarge the legal rights of a tenant holding over beyond the terms and conditions necessary to continue the landlord tenant relationship."); *Vernon v. Kennedy,* 50 N.C.App. 302, 273 S.E.2d 31, 32 (1981) (option term cannot be construed as applicable to the holdover tenancy because by its own terms, it is limited to "the term of the lease or the extended period thereof"); *Ahmed v. Scott,* 65 Ohio App.2d 271, 418 N.E.2d 406, 411 (1979) (by holding over and not renewing lease for an additional term, lessees impliedly accepted modifications of the lease terms, including the option to purchase the leased premises at the price stated in the original lease); *Grisham v. Lowery,* 621 S.W.2d 745, 749 (Tenn.App.1981) ("an option to purchase contained in a lease which is exercisable during the term of the lease is not extended by a holdover tenancy and, therefore, cannot be exercised by a lessee holding over after the expiration of a lease"); *Blaschke v. Wiede,* 649 S.W.2d 749, 750 (Tex.App.1983) ("a holding over under a lease without renewing it does not extend a purchase option beyond the lease term unless a contrary intent appears from the lease as a whole") (citations omitted).

We turn next to the case law cited by Kutkowski, principally *Sisco v. Rotenberg,*

104 So.2d 365 (Fla.1958). In *Sisco*, the appellant succinctly stated both the material facts and legal question presented, as follows:

'When a lease of realty for a specified term of five years also provides that the lessor agrees 'during the tenure of the lease' to sell to the lessee the leased property for a named cash price and also provides that the lessee has the option to renew the lease for a period of five years 'on the same terms and conditions,' does the exercise of the option to renew also extend into the extended term the right of the lessee to purchase the leased premises for the price specified?'

*Id.* at 366.

In disposing of this issue, the Florida Supreme Court adopted the "general rule," which answered appellant's question in the affirmative. Simply stated, "where the original lease, or agreement to lease, provides for an extension of the term, at the tenant's election, an option therein contained to purchase during the term is likewise extended." *Id.* at 369 (citation omitted). In doing so, the Florida court specifically noted that the facts of the case before it rendered unnecessary any consideration of another general rule, *i.e.*, that "[a]n option to purchase during the term cannot be exercised after its expiration by a tenant holding over[.]" *Id.* (citation omitted).[11] Indeed, later Florida decisions confirm that the *Sisco* rule applies only to renewed or extended lease terms, and reject its application to holdover tenancies. See, e.g., *Gower–Goheen Realty, Inc. v. Braun*, 215 So.2d 499, 500 (Fla.App.1968); *Douglass v. Jones*, 422 So.2d 352, 355 (Fla.App.1982); *Gross v. Bartlett*, 547 So.2d 661, 662, 663–64 (Fla.App.1989).

The other cases cited by Kutkowski also support the general proposition that, if a lease agreement includes (1) a right for the tenant to extend or renew the term of the lease and (2) an option to purchase during the term of the lease, and the tenant timely exercises the right to extend or renew the term of the lease, then the option to purchase remains effective during the extended lease term, unless otherwise agreed. *See Ardito v. Howell*, 51 A.2d 859, 861–62 (Del.Ch.1947) (where the word "term" referred to original term and extended term, option to purchase effective during the term of the lease can be exercised during the extended term); *Chosewood v. Byars*, 201 Ga. 805, 41 S.E.2d 530, 531–32 (1947) (upholding verdict that lease agreement giving the tenant a right to extend the lease at same terms and price included the option to purchase set forth in the lease); *Hindu Incense Mfg. Co. v. MacKenzie*, 403 Ill. 390, 86 N.E.2d 214, 216–17 (1949) (option to purchase "any time during lease" was valid and binding during extended term where tenant had exercised option to renew "under same terms and conditions" as in the lease); *Schaeffer v. Bilger*, 186 Md. 1, 45 A.2d 775, 779 (1946) (if a lease with a right of renewal or extension contains an option to purchase, the option to purchase goes along with the extended term, unless clear intent to the contrary appears);[12] *Starr v. Holck*, 318 Mich. 452, 28 N.W.2d 289, 294 (1947) (where lease provided that all terms applied to extensions, which were exercised at tenant's option, option to purchase was valid during extended term); *Balsham v. Koffler*, 8 N.J.Super. 48, 73 A.2d 272, 274 (N.J.Super.A.D.1950) (option to purchase was continued where tenants continued to pay separate monthly charge specifically for the option);

---

11. The *Sisco* opinion includes a useful compendium of cases and other authorities on this topic, which we will not repeat here. *Sisco*, 104 So.2d at 369–74.

12. In later cases, the Maryland courts abandoned the distinction between leases that were extended by right or agreement and holdover tenancies. *See, e.g., Gressitt v. Anderson*, 187 Md. 586, 51 A.2d 159 (1947); *Caplan v. Goldstein*, 232 Md. 552, 194 A.2d 622 (1963). It appears, however, that few jurisdictions have followed Maryland's lead in this regard. *See, e.g., Wright v. Barclay*, 151 Neb. 94, 36 N.W.2d 645, 648 (1949) (rejecting *Gressitt* rule and holding that "the law should

not, by implication, enlarge the legal rights of a tenant holding over beyond the terms and conditions necessary to continue the landlord tenant relationship"); *Carroll v. Daigle*, 123 N.H. 495, 463 A.2d 885, 887 (1983); (rejecting *Gressitt*); *Ahmed v. Scott*, 65 Ohio App.2d 271, 418 N.E.2d 406, 411–12 (1979) (declining to follow *Gressitt*); *but see Peter–Michael, Inc. v. Sea Shell Assocs.*, 244 Conn. 269, 709 A.2d 558, 563 (1998) (while not deciding issue of whether right of first refusal was limited to lease term, concluding that plaintiff's claim was legally sufficient to survive a motion to strike).

*First–Citizens Bank & Trust Co. v. Frazelle,* 226 N.C. 724, 40 S.E.2d 367, 370 (1946) (lease construed to be in force where tenant had option to renew and no formal notice of renewal required; option to purchase was enforceable); *Moore v. Maes,* 214 S.C. 274, 52 S.E.2d 204, 206–07 (1949) (lessee's option to purchase may be exercised during period of renewal or extension where lease gives lessee right of renewal).[13]

 In accordance with the prevailing legal authorities in other jurisdictions, and consistent with existing Hawai'i law, we adopt the following principles:

1. When a lease for a specified term provides for an extension or renewal of that term, exercisable by the lessee, the lessee's timely exercise of the option to extend or renew also extends an option to purchase or right of first refusal, unless otherwise stated in the lease agreement.

2. When a lease for a specified term is not extended or renewed, and the lessee holds over after the expiration of the lease, unless otherwise agreed, the law implies that the parties' rights and obligations with respect to that holdover tenancy continue as set forth in the expired lease agreement.

3. Although a holdover tenancy continues subject to the conditions of that tenancy determined by the original lease, the law will not imply a continued obligation to sell the leased property, absent an expression of the lessor's agreement to continue such obligation during a holdover tenancy.

The first principle is directly supported by *Sisco* and the cases brought to the court's attention by Kutkowski and upon our further research and review. This principle is not undercut by the weight of authorities cited by Princeville LLC, which authorities (and like jurisprudence) contrast the circumstances of an expressly extended or renewed lease term versus a tenancy by holdover, particularly when the covenant creating the option to purchase or right of first refusal limits the exercise of the option to the period of the lease.

The second principle states the common law followed in Hawai'i and most every other jurisdiction surveyed, and sets forth the common understanding and rules applicable to the dealings of landlord and tenant after the termination of their express agreement, but effectuates, as the law must, the parties' right to agree to the contrary.

The third principle embraces a clear majority view, declining to impose on a lessor an extracontractual obligation to part with his or her property by operation of law, as opposed to his or her own expression of assent to such parting.

 We now turn to the application of these principles to the case before us. As the License Agreement does not include a right, exercisable by Kutkowski, to extend or renew the term of the License Agreement, the first principle stated above is inapplicable. We reject Kutkowski's argument that the License Agreement was "extended or renewed" simply by virtue of Kutkowski's holding over. The second principle clearly applies, pursuant to the Holdover Provision in the License Agreement and as a matter of Hawai'i law. The third principle is determinative of the issue raised in Princeville LLC's appeal.

Courts have carefully scrutinized the terms of the leases before them to determine whether the parties intended that an option to purchase or right of first refusal expire with the term of the lease. Thus, our analysis brings us back to the key provisions of the License Agreement. Unlike the lease provisions in *Power Test* and *Carroll,* for example, the Right of First Refusal does not expressly limit the lessee's rights to the five-year term of the License Agreement. In addition, we need not resort to common law to imply the application of the terms and conditions of the License Agreement to the holdover tenancy. The Holdover Provision expressly subjects the holdover tenancy to the terms and condi-

---

**13.** Kutkowski also cites to *O'Brien v. Hurley,* 325 Mass. 249, 90 N.E.2d 335 (1950), which does not support Kutkowski's position. In *O'Brien,* the Massachusetts Supreme Court held that an option to purchase the property could not be validly exercised during an additional "term" where there was no formal renewal or extension of the lease, as was possible if the term had been renewed under a renewal clause in the lease. *Id.* at 336–37.

tions specified in the License Agreement, so far as applicable. There is nothing in the Right of First Refusal, the Holdover Provision, or any other part of the License Agreement that renders the Right of First Refusal inapplicable. The authorities relied upon by Princeville LLC, reflected in the third principle stated above, refuse to impose a continued obligation to sell a leased property during a holdover tenancy in the face of an express limitation of that right to the term of the lease, but do not state that an option to sell or right of first refusal is inapplicable as a matter of law. Thus, we conclude that the Right of First Refusal in the License Agreement is applicable during the holdover tenancy.

### B. *Specific Performance*

Having determined that the Right of First Refusal remains applicable during a holdover tenancy, we return to Kutkowski's point of error, which contends that the Circuit Court erred when it denied his request for specific performance on the grounds that the sale of the Master Parcel did not constitute a decision to sell the Premises. Kutkowski relies not on the intent and scope of the parties' agreement, but on the view adopted in a minority of other jurisdictions, which Kutkowski urges this court to adopt.

 Under Hawai'i law:

Leases are essentially contractual in nature and are reviewed under principles of contract law. . . . Absent an ambiguity, contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech. . . . Moreover, the construction and the legal effect to be given a contract is a question of law freely reviewable by an appellate court.

*Hi Kai Inv., Ltd. v. Aloha Futons Beds & Waterbeds, Inc.,* 84 Hawai'i 75, 78, 929 P.2d 88, 91 (1996) (citations and internal quotation marks omitted).

It is undisputed, and by its own terms, the License Agreement applies only to the Premises and not to the Master Parcel. The language of the Right of First Refusal only manifests agreement concerning a circumstance in which the lessor decided to sell the Premises that are subject to the License Agreement: "[i]n the event Licensor decides to sell *the premises,* it shall be first offered to Licensee on terms and conditions provided by the Licensor[.]" (Emphasis added.) There is no express or implied agreement in the Right of First Refusal, or elsewhere in the License Agreement, concerning a circumstance in which the lessor decides to sell the Master Parcel as a whole. There is no express or implied agreement requiring the lessor to subdivide the Master Parcel prior to or upon its sale in order to offer the Premises for sale to the lessee, or allocating the costs of such subdivision to one party or the other.

We cannot detect any ambiguity in the License Agreement that would warrant consideration of parol evidence that the parties intended such obligations. Even if we were to consider parol evidence, Kutkowski offered not a scintilla of evidence in support of such intent. Indeed, the only parol evidence in the record relevant to the parties' intent would be Kutkowski's March 1998 letter recognizing that the Premises was an undivided part of the larger Master Parcel and further recognizing that the Premises might not be "dividable from the large amount of property Princeville owns" and the lessor's managing agent's memo stating "[t]he tenant will be provided a first right of refusal *in case of subdivision and sale of the property he occupies.*" (Emphasis added.)

Kutkowski requests that this court conclude that the Right of First Refusal must be construed *as a matter of law* to be triggered by the sale of the Master Parcel, notwithstanding the absence of any evidence of an agreement to that effect. Kutkowski then asks that the court order specific performance of the "contractual" Right of First Refusal. And, finally, Kutkowski's argument for specific performance of the Right of First Refusal includes a request that this court remand to the Circuit Court for a determination of the fair market value of the property, and even posits that "there is no reason why Princeville LLC should not be required to seek such a variation [from subdivision and zoning ordinances] in order to satisfy its obligations under the right of first refusal."

We digress briefly to note that, even if we conclude that the Right of First Refusal is triggered by a sale of the Master Parcel, we need not address whether such a variance is feasible, as there is clearly no obligation for the lessor to undertake such actions. On the contrary, under the plain and unambiguous language of paragraph 2 of the License Agreement, the lessor has the right to determine the terms and conditions of any sale, including the purchase price and the satisfaction of any conditions; although the lessee is free to make a counteroffer, the lessee has no right to demand particular terms and conditions. Under the express terms of the License Agreement, a failure to reach mutually-acceptable terms within the specified period ends the period of purchase preemption, freeing the lessor to offer the Premises for sale to the general public.

Returning to Kutkowski's point of error, we consider the cases cited by the parties. Kutkowski points to *Wilber Lime Products, Inc. v. Ahrndt*, 268 Wis.2d 650, 673 N.W.2d 339 (Wis.App.2003), as being instructive. While we agree that *Wilber Lime* aptly summarizes the minority view, we decline to apply its reasoning here. *Wilber Lime* began its analysis with a discussion of another case concluding that "the sale of a large parcel of land triggers a right of first refusal on a smaller portion within the large parcel." *Id.* at 341 (citing *Brenner v. Duncan*, 318 Mich. 1, 27 N.W.2d 320, 322 (1947)). *Wilber Lime* adopted what it recognized as a minority view because to "conclude otherwise would permit an owner and prospective purchaser to, in effect, destroy a bargained-for purchase preemption before [its] expiration[.]" *Id.* at 342 (quoting *Berry–Iverson Co. v. Johnson*, 242 N.W.2d 126, 134 (N.D.1976)) (internal quotation marks omitted). As discussed below, courts holding the majority view have rejected this logic, refusing to enlarge one party's rights over or at the expense of those of the other party, where a right of first refusal was not triggered under the terms of the parties' agreement.

The *Wilber Lime* court struggled, however, with the remedy imposed in *Brenner*, which was to attribute a per-acre "ratio" of the value of the larger parcel to the smaller parcel and permit the tenant-right holder to purchase the smaller parcel for that amount. *Wilber Lime*, 673 N.W.2d at 342–43. *Wilber Lime* recognized the inherent unfairness of such a judicial mandate, noting that "[i]t would bear no relation to its worth and the holder of the right of first refusal would have acquired the property at an absurdly low price and on terms never really agreed to between the parties." *Id.* (citation, internal quotation marks, and brackets omitted). The inequity of this remedy has the potential to be particularly great in a case such as the one at bar, where the Master Parcel is quite large and apparently encompasses a wide range of conditions and uses, including highly-developed resort and golf course areas, and leased agricultural and residential areas.

Instead of a pro rata allocation of value, the *Wilber Lime* court remanded the case for a determination of the "fair market value" of the smaller parcel. *Id.* at 343 (adopting a "middle road" from *Pantry Pride Enters., v. Stop & Shop Cos.*, 806 F.2d 1227 (4th Cir. 1986)). While perhaps better than the *Brenner* remedy, the remedy imposed in *Wilber Lime* is also problematic and, in the present case, would constitute a complete reformation of the parties' agreement. As noted above, the Right of First Refusal here does not determine a price or an agreed-upon method for establishing a price, as is sometimes the case. By comparison, many rights of first refusal require that the right-holder match the price and terms offered by a *bona fide* third-party purchaser. *See, e.g., Wilber Lime*, 673 N.W.2d at 341; *Berry–Iverson*, 242 N.W.2d at 129. In this case, however, the Right of First Refusal gives the lessor the right to provide the "terms and conditions" of sale, with a period of time in which the lessee may accept or make a counteroffer. We note that the rationale given by the *Wilber Lime* court for the adoption of its remedy in that case, in fact, supports our rejection of it here. The court stated: "This approach best fulfills the intentions of the parties when they entered into the agreement granting [the lessee] the right of first refusal." *Wilber Lime*, 673 N.W.2d at 343. We reject Kutkowski's request to specifically enforce a sale at a price and on conditions that, by the plain and unambiguous terms of

the License Agreement, Princeville LLC had no obligation to accept.

The majority view relied upon by Princeville LLC has been summarized as follows:

As indicated in the better reasoned cases collected in an annotation at 170 A.L.R. 1068 (1947), the holder of the option of first refusal on a portion only of a larger tract may not obtain specific performance of his option so as to require conveyance to him of the whole property the owner desires to sell[.] *Nor may the property owner, by an acceptance of an offer to sell the whole, be compelled by judicial decree to dispose of the optioned part separately from the property as a whole. An attempt to sell the whole may not be taken as a manifestation of an intention or desire on the part of the owner to sell the smaller optioned part so as to give the optionee the right to purchase the same* [.]

*Aden v. Estate of Hathaway,* 162 Colo. 311, 427 P.2d 333, 334 (1967) (en banc) (quoting *Guaclides v. Kruse,* 67 N.J.Super. 348, 170 A.2d 488, 493 (N.J.Super.App.Div.1961)) (ellipses and internal quotation marks omitted; emphasis added).[14]

While uniform in their rejection of the view that an attempt to sell a larger parcel triggers a right of first refusal on its smaller part, the actions taken by the majority courts have varied, depending on the specific circumstances before them. The application of the majority view has not, as the *Wilber Lime* court feared, destroyed the bargained-for right of the lessees. For example, in *Guaclides,* the New Jersey court concluded:

We hold that an option of first refusal as to a portion only of a tract may be exercised only if the owner determines to sell that portion for a separate consideration; and the attempted sale of the whole tract for a single price is no indication of an intention or desire to sell the portion alone. There-

fore, [the lessor] may not be compelled by [the lessee] to sell to it the [leased] part, merely because he has determined to sell all his property including that part for a unit price.

170 A.2d at 494.

The court, nevertheless, was cognizant of and careful to preserve the lessee's right until the termination of the lease, stating:

[T]he above cases which deny the optionee specific performance as to the whole or part hold that the owner of the whole may not impair or destroy the preemptive right to purchase the part by a sale or agreement to sell the whole to some third person. The courts have enjoined the conveyance of the portion covered by the option; or where title has already passed to a transferee, with actual or constructive notice of the option, a reconveyance of the optioned portion has been ordered.... We concur in the generally accepted view as to the optionee's right to an injunction to restrain a vitiating of its option by the inclusion, in the owner's prospective sale, of property in excess of that covered by the option. To allow the owner of the whole to by-pass the optionee merely by attaching additional land to the part under option would render nugatory a substantial right which the optionee had bargained for and obtained.

170 A.2d at 494–95 (citations omitted).

Accordingly, the *Guaclides* court refused the lessee's request for specific performance but concluded that the lessor should be restrained until the termination of the lease—which also terminated the right of first refusal—from selling the portion of his property covered by the right of first refusal to anyone but the right-holder lessee, without giving the lessee the first opportunity to purchase at the bona fide offer price acceptable to the lessor. *Id.* at 497; *see also Chapman v.*

---

**14.** In his opening brief, Kutkowski ignores the Colorado Supreme Court's decision in *Aden* and instead urges the court to follow a Colorado Intermediate Court of Appeals decision in *Thomas & Son Transfer Line, Inc. v. Kenyon, Inc.,* 40 Colo.App. 150, 574 P.2d 107 (1977). However, the *Thomas* court explained that, unlike in *Aden* where the preemption-burdened parcel was a portion only of a larger tract, the bundled prop-

erties in *Thomas* were separate, non-contiguous tracts, separated from one another by two lots owned by a third party, and therefore the case was factually distinct. *Id.* at 112. The case before us is much more akin to *Aden,* as the ½–acre Premises leased by Kutkowski are an undivided part of the 1000–acre Master Parcel owned by Princeville LLC.

*Mut. Life Ins., Co.,* 800 P.2d 1147, 1150, 1152 (Wyo.1990) (rejecting claim for specific performance of right of first refusal because consideration of offer on large tract did not constitute intent to sell smaller tract, as would be necessary to provide grounds for specific performance; remanding for injunction of any sale including the smaller parcel, until owner receives an acceptable offer for it and the right of first refusal is thereby transformed into an option); [15] *Ollie v. Rainbolt,* 669 P.2d 275, 279, 282 (Okla.1983) (conditions of right of first refusal not presented and thus specific performance of preemptive right denied; case remanded to grant rightholder's requested temporary-injunction of sale including preemption-encumbered part until such time as a sale is conducted with full regard for the right of first refusal); *Gyurkey v. Babler,* 103 Idaho 663, 651 P.2d 928, 933 (1982) (adopting majority rule rejecting claim for specific performance and enjoining sale of larger parcel pending bona fide offer for smaller lot only).

In *Aden,* the lessees argued that a proposed sale of a large tract of land, which included a smaller tract that they leased, triggered the right of first refusal in their lease agreement. *Aden,* 427 P.2d at 334. The sale fell through, however, when lessees refused to waive their right of first refusal. *Id.* The lessees nevertheless filed suit, seeking to compel a sale at a pro rata price based on the agreed-upon price for the larger tract. *Id.* The en banc Colorado Supreme Court affirmed the trial court's refusal to order specific performance of a sale of the smaller tract, in effect leaving the parties in the same position as before the lessor entertained the offer on the larger tract. *Id.; see also At-*

*lantic Ref. Co. v. Wyom. Nat. Bank of Wilkes–Barre,* 356 Pa. 226, 51 A.2d 719, 725 (Penn.1947) (rejecting lessee's argument that offer of larger parcel triggered first-option-to-purchase clause in lease; denying specific performance to both lessee and prospective buyer; noting that "title to the property will continue where it has been, viz., in the defendant [lessor]").

In *C & B Wholesale Stationery v. S. De Bella Dresses, Inc.,* 43 A.D.2d 579, 349 N.Y.S.2d 751, 753–54 (1973) (citations omitted), a New York appellate court concluded that the sale of certain leased premises as part of a larger parcel did not entitle the lessee to specific performance because "the lessor had no intention to sell only the leased premises." The court, however, granted the plaintiff-lessor's request for rescission of the sale of the larger parcel because "[t]he right which plaintiff enjoyed by virtue of the first refusal clause cannot be rendered nugatory by the device of attaching additional land to the leased premises and finding a buyer for the entire parcel." *Id.* (citation omitted); *Saab Enters., v. Wladislaw Wunderbar,* 160 A.D.2d 931, 554 N.Y.S.2d 657, 658 (1990) (same).

This sort of remedy has been rejected in some cases adopting the majority rule. For example, in *Crow–Spieker No. 23 v. Helms Constr. & Dev. Co.,* 103 Nev. 1, 731 P.2d 348, 349 (1987), in conjunction with a sale of Tract A, the sellers agreed that "if and when we decide to sell" Tract B, the buyer would have the first opportunity to purchase Tract B for the same price and subject to the same terms as offered by a bona fide third party purchaser, if the terms were to be acceptable to the sellers. Years later, the sellers decided that it would be advantageous to sell Tract B

---

**15.** The right of first refusal in *Chapman* was not part of a lease agreement and was instead contained in a contract for deed for an adjoining parcel. 800 P.2d at 1148. Thus, when the landowner sold the first parcel, it gave its buyers a right of first refusal on the adjoining 20–acre parcel. *Id.* Unlike the preemptive rights generally contained in lease agreements, this one apparently had no termination date. *See id.* When the landowner later entertained an offer for a 273–acre tract including the 20–acre parcel, the preemptive-right-holding buyers sought specific performance of the right of first refusal on the 20–acre parcel. *Id.* at 1149. The court's rejection of the requested specific performance and its

adoption of an injunctive remedy avoided an "undesirable" reformation of the parties' contract, and instead returned the parties to the "positions they occupied before [the] attempted sale of the larger parcel" and provided an opportunity for the performance of the parties' agreement "without judicial intrusion into establishment of the price term of any desired sale." *Id.* at 1152. Unlike a lease provision that terminates with the period of the lease, the preemptive right in *Chapman* did not have a termination date, thus remained exercisable until a bona fide offer for the subject parcel transformed it into an option that could then be exercised or waived. *Id.* at 1150, 1152.

as part of a much larger parcel. *Id.* The Nevada Supreme Court determined that the right of first refusal was not implicated because the right of first refusal clearly applied only to offers for Tract B. *Id.* at 350. The court explained that it "would not condone an attempt to evade [buyer's] contractual rights by engineering the sale of a larger parcel, . . . but in this case there was no evidence of any wrongful intent." *Id.* (citations omitted). Rather, the record reflected a "good faith decision" by the seller to sell the entire tract. *Id.* Accordingly, alternative claims for specific performance or money damages were both rejected. *Id.; cf. Martinesi v. Tidmore,* 158 Ariz. 53, 760 P.2d 1102, 1103–04 (Ariz.App. 1988) (held that owner may convey property subject to a lease, including option to purchase; initial owner, however, is not relieved of liability for subsequent breach of option agreement exercised prior to termination of lease).

Some jurisdictions adopting the majority rule have recognized the remedies available to maintain the status quo until the right of first refusal expires, such as injunctive relief or rescission of the sale, but declined to apply them because of the particular facts of the case. For example, in *Straley v. Osborne,* 262 Md. 514, 278 A.2d 64, 69–70 (1971), the Maryland Court of Appeals held that a right of first refusal did not give the lessee a right to compel the sale of the smaller (leased) portion based on lessor's acceptance of an offer for the larger parcel including leased premises. Although recognizing that lessor "cannot act in derogation of the lessee's 'first option' rights in the leased premises," the court refused to set aside the sale to a third party or to order specific performance because lessee had actual notice of the impending sale, over a period of many months, and took no steps to attempt a purchase, enjoin the proposed sale, or otherwise protect his right until after the third party sale closed. *Id.* at 70–71. In *Advanced Recycling Systems, LLC v. Southeast Properties Limited Partnership,* 787 N.W.2d 778, 784–85 (S.D. 2010) (citing, *inter alia, Chapman* ), the Supreme Court of South Dakota held that the landlord did not violate the tenant's right of

first refusal by selling the development that included the leased property because there was no evidence of an offer to purchase the leased premises apart from the development. Although noting the remedies of enjoining the conveyance or ordering reconveyance of the property including the leased premises, the court declined to grant any equitable relief because the lessee did not pursue its right of first refusal until after the lease expired. *Id.* at 786 n. 5; *see also Myers v. Lovetinsky,* 189 N.W.2d 571, 576, 577 (Iowa 1971) (holding that "to grant specific performance of the demised premises for their market value is to rewrite the tenant's preferential right" and thus "in these situations the tenant's relief is limited to maintaining the status quo ante with respect to the demised premises for the rest of the term of the lease"; denying any relief to tenant who failed to act prior to expiration of the lease term).

■ We adopt the majority view and conclude that the sale of the Master Parcel may not be taken as a manifestation of Princeville Corp.'s intention or desire to sell the Premises so as to entitle Kutkowski to specific performance of the Right of First Refusal, as to grant Kutkowski's requested relief would require a wholesale reformation of the parties' agreement and, *inter alia,* require judicial establishment of a price term, which would directly contradict the bargained-for rights of the parties. That said, Hawai'i courts will not allow an owner, such as Princeville Corp., and a prospective purchaser or actual purchaser, such as Princeville LLC, to, in effect, destroy a bargained-for right of first refusal before its expiration. In many circumstances, that conclusion would lead to an injunction of a prospective sale or the rescission and/or reconveyance of a completed sale, in order to maintain the status quo, preserving the lessee's right of first refusal, until its exercise, waiver, or termination at the expiration of the lease.

Here, Kutkowski initially filed this suit prior to Princeville Corp.'s sale of the Master Parcel to Princeville LLC.[16] Kutkowski did

---

**16.** Kutkowski later filed a First Amended Complaint reflecting that the sale had been completed

after the suit was filed.

not seek to enjoin the sale prior to its March 17, 2005 closing; nor has he requested the rescission of the sale of the Master Parcel. In the Assumption Agreement, Princeville LLC expressly assumed and in effect acknowledged that Kutkowski's rights under the License Agreement survived the sale of the Master Parcel. As discussed above, Kutkowski's rights as a month-to-month holdover tenant include the Right of First Refusal, but that right terminates if and when the holdover tenancy is terminated.

Also, the record in this case shows that Kutkowski, Princeville Corp., and Princeville LLC entered into the Stipulation, substituting Princeville LLC as the proper party defendant in this suit. In the Stipulation, Kutkowski agreed to seek relief only from Princeville LLC and agreed to the dismissal with prejudice of Princeville Corp., including the dismissal and release of all claims, known or unknown, against Princeville Corp. Princeville LLC agreed that any claims that could have been made against Princeville Corp. may instead be made against it and that Princeville LLC will pay such claims or render such performance as would have been due from Princeville Corp.

In the absence of any request for such relief and under the circumstances of this case, neither an injunction maintaining Princeville Corp.'s ownership of the Premises nor rescission and/or reconveyance of the Master Parcel are warranted. Moreover, contrary to Kutkowski's assertion on appeal, his rights under the Right of First Refusal remain intact and enforceable against Princeville LLC so long as the holdover tenancy continues, to the same extent it would have been enforceable against Princeville Corp. if the Master Parcel had not been sold. Thus, if Princeville LLC were to decide to sell the Premises, it must first be offered to Kutkowski on terms and conditions offered by Princeville LLC, in accordance with the Right of First Refusal. We recognize that Kutkowski is dissatisfied with this outcome because he has no right to continue the holding over without his lessor's consent and, upon proper notice, the holdover tenancy may be terminated, along with the right of first refusal. However, that is the extent of the parties' bargain, which we will neither expand nor abridge.

## V. CONCLUSION

For the foregoing reasons, the Circuit Court's October 2, 2007 Judgment is affirmed.

FUJISE, PRESIDING JUDGE, and LEONARD, J.; with GINOZA, J., concurring separately.

Concurring Opinion by GINOZA, J.

I concur that Plaintiff–Appellant/Cross–Appellee Robert Kutkowski (Kutkowski) is not entitled to specific performance or other relief based on his attempt to exercise the subject right of first refusal to purchase (right-of-first-refusal) during the period that he was holding over. Given the plain language of the License Agreement involved in this case, I conclude that the right-of-first-refusal applied during the term of the license and was not in effect during the holdover period.

The parties assert different interpretations of the relevant provisions in the License Agreement, but do not contend that the provisions are ambiguous. Kutkowski asserts, in the alternative, that if the language of the agreement were deemed to be ambiguous, parol evidence shows the parties' intent was to extend the right-of-first-refusal to the holdover tenancy. Looking no further than the four corners of the License Agreement, no ambiguity exists. *See Found. Intern., Inc. v. E.T. Ige Const., Inc.,* 102 Hawai'i 487, 497, 78 P.3d 23, 33 (2003). "In the absence of any ambiguity, a question of construction arising upon the face of the instrument is for the court to decide." *Id.* (citation omitted).

"[A]n agreement should be construed as a whole and its meaning determined from the entire context and not from any particular word, phrase or clause." *Leeward Bus Co. v. City and Cnty. of Honolulu,* 58 Haw. 64, 68–69, 564 P.2d 445, 448 (1977) (quoting *Ching v. Hawaiian Rests. Ltd.,* 50 Haw. 563, 565, 445 P.2d 370, 372 (1968)). "Absent an ambiguity, contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech." *Hi Kai Inv., Ltd.*

*v. Aloha Futons Beds & Waterbeds, Inc.*, 84 Hawai'i 75, 78, 929 P.2d 88, 91 (1996) (citation omitted).

Reading the License Agreement as a whole, I respectfully differ from the majority by concluding that the right-of-first-refusal applied during the term of the license and not during the holdover period. Paragraph 2 states:

> 2. *Option to Purchase:* Licensor expressly reserves the right to sell the licensed premises *during the term of this license* and to place such signs and notices on or about the premises for such purposes, subject only to the rights of the Licensee contained herein. *In the event Licensor decides to sell the premises, it shall be first offered to Licensee on terms and conditions provided by Licensor;* PROVIDED, HOWEVER, that Licensee shall have at all times faithfully and punctually performed all of the covenants and conditions of this agreement on the part of Licensee to be performed. Licensee shall have sixty (60) days to accept the Licensor's offer or make a counter offer; PROVIDED, HOWEVER, that if no sales contract is executed within one hundred twenty (120) days after Licensor's initial offer, (1) Licensor shall be free to offer the premises for sale to the general public and (2) *this license agreement shall be automatically amended with occupancy to continue on a month to month term.* Should the premises be thereafter sold during the term of the month to month license, Licensor shall give Licensee forty-five (45) days prior notice of termination of this license, upon which Licensee shall relinquish all rights hereunder.

(Emphasis added).

The first sentence, which specifies the relevant period as "during the term of this license," is not a stand-alone provision. Rather, as a whole, paragraph 2 in my view sets forth the rights and obligations of the parties in the event the Licensor decided to sell the premises during the term of the license. In

addition to the first sentence being part of the entire paragraph, Defendant–Appellee/Cross–Appellant Princeville Prince Golf Course, LLC (Princeville LLC) points out that, if no sales contract is executed within the specified one-hundred and twenty day period, the Licensor is free to offer the premises for sale to others and "this license agreement shall be automatically amended with occupancy to continue on a month to month term." Converting the occupancy to a month to month term has practical application during the term of the license, but not during a holdover period. The agreement itself later specifies that any holdover period would already be month to month. The conversion provision in paragraph 2 thus amplifies that the right-of-first-refusal applied during the term of the license.

The above reading of paragraph 2 is consistent with the holdover provision set out in paragraph 22 of the License Agreement, which states:

> 22. *Effect of Licensee's holding over:* Any holding over after the expiration of the term of this agreement, with consent of Licensor, shall be construed to be a license from month to month, at the same rate as required to be paid by Licensee for the period immediately prior to the expiration of the term hereof, and *shall otherwise be on the terms and conditions herein specified, so far as applicable.*

(Emphasis added). Where the right-of-first-refusal applies "during the term of this license," it is not a term or condition "applicable" during the holdover period.

Kutkowski asserts that *Schimmelfennig v. Grove Farm Co.*, 41 Haw. 124 (Haw. Terr.1955) and *Pioneer Mill Co. v. Ward*, 34 Haw. 686 (Haw.Terr.1938) support the proposition that the terms and conditions of a written lease continue during a holdover period. I agree with the majority that *Schimmelfennig* and *Pioneer Mill* are not dispositive. Neither case dealt with a right-of-first-refusal to purchase the subject property.[1]

---

1. *Pioneer Mill* addressed whether a lease provision, requiring the lessee to surrender the premises along with improvements, applied to improvements made during a holdover period. 34

Haw. at 700–01, 704. *Schimmelfennig* addressed whether, after ten successive leases, an implied covenant to restore leased premises to their condition at the beginning of the first lease

Moreover, *Schimmelfennig* recognized and applied the principle that certain terms in a lease may not be applicable "to the new condition of things" during a holdover period. 41 Haw. at 133 ("It has also been held that '[w]hen a tenant holds over, the tenancy is subject to covenants and stipulations contained in the original lease *only so far as are applicable to the new condition of things.*'") (emphasis added and citation omitted). Thus, *Schimmelfennig* appears to have recognized that the rule in *Pioneer Mill*—that a holdover tenancy after expiration of a lease is subject to the same covenants and agreements contained in the lease—is not absolute. *Schimmelfennig* and *Pioneer Mill* do not resolve this appeal.

Rather, based on case law from other jurisdictions, and because in my view paragraph 2 of the License Agreement provides Kutkowski with a right-of-first-refusal *during the term of the license*, such right does not continue during the period that he was holding over after expiration of the term of the license. *See Carroll v. Daigle,* 123 N.H. 495, 497–99, 463 A.2d 885, 886–87 (1983) (adopting as more persuasive "the decision of other jurisdictions which hold that a purchase option which may be exercised only during the term of the lease does not carry over into the holdover tenancy."); *Grisham v. Lowery,* 621 S.W.2d 745, 749 (Tenn.App. 1981) (adopting the rule that "an option to purchase contained in a lease which is exercisable during the term of the lease is not extended by a holdover tenancy and, therefore, cannot be exercised by a lessee holding over after the expiration of a lease"); *Vernon v. Kennedy,* 50 N.C.App. 302, 273 S.E.2d 31 (1981); *Gower–Goheen Realty, Inc. v. Braun,* 215 So.2d 499 (Fla.Dist.Ct.App.1968); and D.E. Ytreberg, Annotation, *Holding Over Under Lease, Or Renewal Or Extention Thereof, As Extending Time For Exercise of*

*Option To Purchase Contained Therein,* 15 A.L.R.3d 470, 491–94 (1967).

I respectfully concur on these grounds.

---

applied to a holdover tenant. 41 Haw. at 126–27.

